**KONTNER, Plaintiff-Appellant, v. KONTNER, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 5333.   Decided March 7, 1956.

98

Smith, Clark & Holzapfel, Columbus, John E. Holzapfel, of Counsel, for plaintiff-appellant.

John H. Lewis, Columbus, for defendant-appellee.

(CONN, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By HORNBECK, J:

This is an appeal from a decree of divorce to defendant and an award of alimony to him. The ground upon which the decree was granted was that the plaintiff had a husband living at the time of the marriage to the defendant and the judgment entry recites "that in lieu of alimony" defendant is awarded certain real estate known as 141 Mill Street, Nelsonville, Ohio, and "all furniture and household furnishings in the house and garage in the foregoing real estate" except an electric washer, dryer, three level table, hall desk and chair, and one unfinished chest of drawers.

Three errors are assigned:

(1) In overruling the motion of plaintiff for new trial.

(2) Decree is contrary to law, and

(3) Is against the manifest weight of the evidence.

It is seldom that a divorce case presents so many questions of law as does this one. We cannot discuss all of them.

May, 1953, the plaintiff instituted her action for divorce against the defendant, charging gross neglect of duty and extreme cruelty and praying for alimony, temporary and permanent. On August 3, 1953, defendant answered generally denying the allegations of the petition with the exception of formal averments as to residence of plaintiff and in a cross-petition alleged that a ceremonial marriage was performed for himself and plaintiff on January 29, 1939, at Greenup, Kentucky; that at the time the marriage ceremony was performed, plaintiff had a husband living and that he is still living; that his marriage with plaintiff

has never been terminated. He further alleges that on February 13, 1939, plaintiff having failed to make full disclosure of circumstances concerning her prior relationship with her husband, Ross Watkins, induced the defendant to convey to her certain described real estate in the City of Nelsonville, Ohio, and also induced the defendant to cause his brother to convey to plaintiff certain real estate described in petition, the brother holding said real estate in trust for defendant. Defendant specifically avers that the transfers of the real estate to plaintiff were made by him with the mistaken belief that he and the plaintiff were lawfully married and that there was a total failure of consideration for said transfers. He avers that he has made all the payments that have been made on mortgages encumbering the described real estate and improvements thereon. He alleges that he first had conclusive evidence concerning the existing marital relationship between plaintiff and Ross Watkins at the deposition hearing wherein the plaintiff testified under oath on August 1, 1953. Concerning this deposition, it is plain that in one answer plaintiff indicated that she had a choice of divorcing Watkins or leaving him. The implication may be drawn that she recognized that there was no impediment to her marriage to Watkins. The answer in its entirety is uncertain in meaning. However, within a few minutes after this statement, and after very few succeeding questions, the plaintiff reiterated the contention that she had at all times maintained, viz., that she had been advised that because Watkins was married when he married her, no divorce was necessary as a prerequisite to her marriage to the defendant.

Plaintiff, in her answer to the cross-petition, after admitting certain of the formal averments of the cross-petition, generally denied the other allegations. As a first defense, she avers that she and defendant had resumed marital relations on July 9 and July 26, 1953, which defendant and his counsel well knew when the cross-petition was filed.

As a second defense, she alleges that at the time of her marriage to defendant, he had not been divorced from his former wife, Anna Kontner. On this last averment, the record discloses that in the divorce hearing of defendant's first wife, the trial judge had orally announced a decree of divorce in her favor. The entry journalizing the order did not go on until later. The parties herein were married before the formal decree of defendant's divorce had been spread upon the record. Thus, the plaintiff had the same cause of action against the defendant for a divorce as he had against her.

When the cause eventually came on for trial, the evidence as developed by the plaintiff disclosed that when quite young (she says fourteen years of age; defendant insists that she was sixteen), because of the breaking up of her home, she was sent by her mother to visit her aunt, known as Mrs. N. B. Stewart, who was then living with her purported husband in West Virginia. This arrangement not being satisfactory, plaintiff's mother suggested that she go to live with another relative. Plaintiff had started to make the trip to the home of this relative when her uncle, Stewart, requested her to meet him in Bluefield, West Virginia. When they met at Bluefield, Stewart represented to plaintiff that he had not been married to her aunt and that he desired to

marry her, whereupon they went to some office where an individual, whom the plaintiff took to be a judge, went through the form of a ceremonial marriage. Immediately thereafter, Stewart changed his name to Watkins. The parties lived together as husband and wife for sixteen years, one child (a daughter), having been born, who was of age at the time of the trial in this action and had lived with her mother at all times since her birth.

After the marriage to Stewart, alias Watkins, the parties moved to Dayton and afterwards to or near Nelsonville, Ohio, where they lived together as husband and wife for a period of ten years. During this residence at Nelsonville, plaintiff traded with defendant at his grocery store, charges were made against her as Mrs. Watkins, he so knew her, delivered groceries to her home, discovered that Watkins was untrue to plaintiff, so notified her, advised her to get a divorce. Defendant became enamored of plaintiff, carried on a courtship of two years and then, in 1939, married her.

Plaintiff testified that when she confronted Watkins with the charge that he had been unfaithful to her and that she proposed to divorce him, he informed her that such procedure was unnecessary because when he married plaintiff, he was then married to her aunt. Plaintiff says that she fully informed the defendant of all of the facts and circumstances respecting her relationship with Watkins. This the defendant denied.

Plaintiff says that defendant consulted a lawyer respecting her status and reported that he advised that she would not be required to secure a divorce from Watkins before she could legally marry the defendant. Defendant insists that he did not consult a lawyer but that plaintiff did so and reported that she had been advised respecting the invalidity of her purported marriage to Watkins.

Without quotation from the witnesses, the evidence is overwhelming in corroboration of the contention of plaintiff that defendant was fully informed as to the marital relationship between Watkins and plaintiff when the defendant married her, and that he and not the plaintiff consulted a lawyer. Mrs. Kelso, the wife of the lawyer, whom it is asserted defendant visited, states that he was a client of her husband. Mrs. Taylor testifies that the defendant told her that he had consulted a lawyer respecting the necessity of divorce. Two of plaintiff's sisters say that defendant brought plaintiff to their home in the south and said to them that he knew all about plaintiff's past, that bygones should be bygones; that he wanted to marry plaintiff, give her a home and adopt her daughter; that Watkins had taken advantage of plaintiff when she was a young girl and could not protect herself.

Obviously, something convinced the defendant that there was no impediment to his marriage to plaintiff. Defendant admits that he had agreed to adopt her daughter, and explains his failure to do so only because it took money. Defendant did furnish the daughter with a home and was liberal with her, at times. When she graduated as a Registered Nurse, he gave her an automobile. However, plaintiff paid all the expenses incident to her daughter's training for a Registered Nurse. Although the trial judge was correct in saying that defendant

was under no legal obligation to support the daughter, he was under a moral obligation which would justify whatever support he gave her.

During the trial on the issues drawn, the trial judge was amply justified in finding that a ceremonial marriage had been performed between Watkins and plaintiff and that there has been a long period of holding out by them as husband and wife but no proof of the issuance of a marriage license or certificate of the marriage. The proof supported the finding of a marriage, §3105.12 R. C. The court could not properly, under the evidence, hold that defendant was not at all times cognizant of this relationship including the statement of Watkins that he was a married man when he married plaintiff.

It is urged that the decree and alimony award are contrary to law. We cannot so hold.

The first syllabus of Eggleston v. Eggleston, 156 Oh St 422 provides that:

"Sec. 11979 GC, authorizing the granting of a divorce where 'either party had a husband or a wife living at the time of the marriage from which the divorce is sought,' provides an exclusive remedy involving that situation."

The effect of this adjudication justified the holding that when plaintiff married the defendant, as there had been no annulment of her marriage to Watkins, it was still effective.

After the court had granted a decree to the defendant and required plaintiff to deed real estate which defendant had deeded to her and awarded him practically all of the household goods, the plaintiff moved for a new trial on the ground of newly discovered evidence. In support of this motion, plaintiff produced a certificate of marriage disclosing that when the purported marriage between her and Stewart, alias Watkins, was pronounced, he was then the husband of plaintiff's aunt. This corroborated the contention which plaintiff had at all times made respecting her knowledge and that of defendant of her marital status with Watkins.

The trial judge refused to grant the motion for a new trial and held that the marriage certificate had no effect whatever to require any change in the decree or in the award of alimony.

We are in agreement that the marriage certificate did not require a different holding as to the right of the defendant to a decree of divorce. However, it was of vital importance as it affected the good faith of the plaintiff in entering into the marriage relation with the defendant, his probable knowledge of that fact and particularly as it related to the credibility of plaintiff. This development first produced on the motion for a new trial should, if considered, have had marked influence on the propriety of the alimony award.

The third assignment of error is that the decree and award of alimony are against the manifest weight of the evidence. Upon the record, independent of the facts developed on the motion for new trial, we cannot disturb the decree of divorce. However, we are satisfied that the alimony award is manifestly against the weight of the evidence and in making it the court abused its discretion.

It should be observed that the defendant in his answer prayed for no

alimony but sought to have the deed for certain real estate, including the home of the parties, cancelled because of failure or consideration for the transfers; that the deeds were induced by fraudulent representation of the plaintiff and made with the mistaken belief that the parties were lawfully married. He also charges that he paid for all improvements on the real estate and all of the incumberances upon the real estate.

The deeds recite considerations of $1.00 and other good and valuable considerations which, prima facie negative, at least, the claim that there was no valuable consideration for the transfers.

It does not appear that the defendant made all the payments on the mortgage although it is probable that he paid the greater amount thereof. There was a mortgage on the premises when deeded to the plaintiff in the amount of $3300.00, which throughout the years had been reduced only to about $1900.00. There were loans made on the real estate, probably for the benefit of defendant, other than the amount secured by the mortgage on it when the parties were married.

The defendant does not claim that prior to the institution of the divorce by plaintiff he was denied any use of the home property. His claim that at the time he made the deed, he believed the plaintiff to be married, in form, is probably true because that is the very basis upon which he secured his decree of divorce. Of course, it is probable that he believed that this impediment to his marriage had been removed. Inasmuch as defendant had full knowledge of the marital status of plaintiff, he cannot be heard to say that it in any sense constituted a fraud against him to cause him to make the deed.

Defendant contends, and his counsel argues, that the plaintiff was an adventuress, a young woman who took advantage of him, unduly influenced him and fraudulently induced him to make the deed. It seems clear that the defendant was the pursuer and not the pursued. He even made it his concern to investigate the infidelity of Watkins to plaintiff, reported it to her, as a result of which she probably was induced to resolve to divorce Watkins. But there is no logical inference to be drawn from the record that the defendant was wrongfully induced to deed the real estate to plaintiff. He had indicated a purpose to do so some time before he acted. The deeds are from a brother of defendant as Trustee for defendant for certain lots not owned by him at the time of trial, executed February 23, 1939, transferred January 14, 1940, recorded January 27, 1941. The other, for real estate, known as the home property, from defendant probably of same date as the former deed, photostat not clear, transferred and recorded same date as former deed. It is probable that the deeds were not delivered until about the time of the transfer.

The proof is conclusive that the property which was ordered re-deeded to the defendant was transferred to plaintiff as a gift without any undue influence whatever to bring it about.

Considerable time and effort was devoted to the question of condonation in this case. The answer of the defendant and the testimony supporting it, that after the filing of the petition, viz, on July 9, and July 26, 1953, the parties had sexual intercourse and resumed the marital

relationship, was properly held to be a condonation of the causes of divorce pleaded by her. The contention of the defendant that he did not know of the true marital status of plaintiff until August 1, 1953, subsequent to the condonation of plaintiff's cause of action, was urged as a complete defense to any claim of condonation against him.

If condonation has application to deny the defendant the right to a decree of divorce, it is clearly established. His claim that he first learned of the real marriage of plaintiff and Watkins on August 1, 1953 is untenable, and incredible.

We do not believe that condonation, as such, precludes a decree of divorce upon the grounds asserted by the defendant. There is, indeed, a very nice question whether the trial judge should have granted him any relief upon application of the clean hands doctrine which many times is invoked by courts to deny a decree.

It must be kept in mind that the issue as to the gross neglect of duty of defendant was not tried because of the dismissal of her petition. Thus, the extent of the failure of defendant to support the plaintiff was not in issue as to the right of a decree to the defendant or a decree to the plaintiff. It only was of value as it related to the general situation.

Defendant at great length put into the record itemized expenditures which throughout the years he had made for household expenses. This did not disprove the claim of plaintiff and her daughter that they may have provided much of the necessities such as food and clothing. Of all the items of expenditure which defendant produced no one of them was for expenditure for food or clothing, and it was testified and not denied that plaintiff paid half the rent for the living quarters of the parties in Columbus.

But, if it be assumed that the defendant provided all of the support and maintenance of the plaintiff, if the marriage is valid until voided by divorce, as the Eggleston case holds, it was no more than he was obligated to do by virtue of his status as her husband.

The plaintiff was not required under the law to seek employment and produce means to assist in her support, but it is developed that at all times since the marriage she has assisted him and since 1942 has worked, and since 1947 continuously, considerable of the time holding two jobs. She and her husband worked at the same place and she has been promoted three times, so at the time of trial she was earning more than he. It is also fair to say that at the time of trial plaintiff was probably in better health, although under the care of a physician, and had more financial resources than the defendant, but that she was blame-worthy for any of these advantages or secured them by any fraud on defendant does not appear. Her industry and efficiency is to be commended. The blindness of defendant in one eye, which was assigned as one reason for the alimony award, was a condition that was present when he married the plaintiff and it does not appear that he is incapacitated from regular employment.

In one of the findings of fact, it is held that the plaintiff had incurred heavy expenses by way of charge accounts; that she had made purchases of jewelry and diamonds far beyond her financial ability. It must be

observed that this finding does not hold that the charges were made against the account of defendant, and the only jewelry or diamonds that appear to have been purchased by plaintiff was a wedding band for herself and a watch and a small diamond ring for her daughter that were given to her when she graduated as a Registered Nurse. The watch was to be paid for by the defendant, but the plaintiff eventually had to liquidate this debt.

One of the findings of fact weaves into the subject matter some evidence which had been developed to the effect that the plaintiff had spent considerable time in the home of her immediate superior and this is employed for the conclusion that she was not performing her marital obligations toward her husband. All of the time that plaintiff spent in the home of her employer would not seriously impair her ability to perform such household and marital duties as she would normally have time to do when she was free from her regular employment. In view of the attitude and testimony of the defendant, it is probable that this finding carries a veiled imputation, not justified on the proof, of some improper conduct on the part of the plaintiff and her employer.

From the very inception of this law suit, the defendant had carried on a course of conduct that is very unusual and most reprehensible. He sent clippings to plaintiff from newspapers depicting a suicide by some woman under distressing circumstances and appended therewith his statement that plaintiff and daughter might suffer a like fate. He wrote threatening letters to plaintiff's employer charging improper conduct on her part. He wrote at least one other person in similar vein. Several times he had to be cited for contempt for disregard of the court's orders.

Upon the whole record, which is voluminous, consisting of six hundred pages of testimony, two or three depositions, thirty or thirty-five exhibits, and numerous contempt citations and interlocutory hearings and orders, we find no substantial support, upon equitable principles, for an award of alimony to the defendant of the real estate which he deeded to plaintiff after their marriage.

In so holding, we are assuming for the purposes of this appeal, that the court had the right upon proper evidence to award alimony to the defendant as an incident to his divorce; ordinarily, it is so. **Borst v. Borst, 14 Abs 525, Downing v. Downing, 18 Oh Ap 223.** But the court must exercise a sound discretion in making the award, **Baker v. Baker, 40 Oh Ap 170.**

Alimony in its primary significance is an allowance for support for the wife, which obligation the husband owes the wife. If it be extended to an allowance for the husband, it should appear that he is in need of the award for support. The term "alimony" has been so loosely employed in our statutes and by our courts as to require elucidation. The cause of action upon which defendant sought his decree is not a ground for alimony, under §3105.17 R. C., and there is indeed a serious question if the following section, §3105.18 R. C., authorizes an award for alimony when no one of the grounds theretofore designated in §3105.17 R. C. appears. We do not, however, hold that the trial judge did not have the right to award some alimony to the defendant.

The court did not and could not properly find that there was any support for the charge in the cross-petition of defendant that the plaintiff had secured deeds to the property described by fraud.

We therefore hold that the third error assigned is well made, and that the award of alimony as made was erroneous and prejudicial to the plaintiff.

The conduct of the plaintiff respecting the situation that developed by reason of her marriage to Stewart, alias Watkins, her years of living with him as his wife, the ultimate statement to her by him, upon which she concluded that he was married to her aunt when he married her, and the subsequent advice that she did not need a divorce as a prerequisite to her marriage to the defendant, all disclose good faith and lack of meretricious conduct on her part. Indeed, the purported advice of the lawyer that the marriage to Watkins was invalid was not unusual.

Plaintiff's conduct in leaving Watkins, when she learned of his prior marriage, was an act of avoidance of a voidable contract which, prior to the holding in the Eggleston case that divorce was the exclusive remedy to annul the marriage, had been the subject of many suits in equity to annul. The one missing element of good faith of plaintiff was developed by the production of the marriage certificate.

This plaintiff could not have been convicted of bigamy in her marriage to the defendant because intent is a necessary element of that crime. Innocent mistake, good faith, reasonable diligence, and honest belief in her right to enter into the second marriage would have been a complete defense to her had she been so charged, **5 O. Jur. 619.** The innocent mistake and good faith of the plaintiff could not be turned against her to deprive her of real estate to which she was clearly entitled.

Although it is probable that oral announcement of a decree of divorce to defendant's first wife was made on January 28, 1939, one day before he married plaintiff, the formal decree was not filed and journalized until February 1, 1939. The defendant was technically chargeable with the same misconduct when he married plaintiff as that upon which he grounded his cause of action against her. **Cox v. Cox, 108 Oh St 473; Industrial Commission v. Musselli, 102 Oh St 10.**

We then come to the last error assigned, namely, that the court erred in denying a motion for new trial. As we have heretofore said, the principal effect of the marriage certificate was to establish the good faith of plaintiff in her relation toward the defendant and, particularly, to give standing and credibility to her testimony and to discredit that of the defendant. There is no doubt that the probative effect of the marriage certificate affects materially the substantial rights of the parties.

But it is urged that the plaintiff has not used reasonable diligence to discover and produce the marriage certificate at the trial and that the evidence tendered on the motion is merely cumulative. Clearly, the evidence is not cumulative. It is of a different and higher degree of proof than the oral statement of the plaintiff of what her former husband, Watkins, had told her.

During the trial of the cause, plaintiff testified that she and defendant had made determined efforts to discover the true facts respecting her marriage with Watkins. This testimony was not elaborated, and could have been more detailed and specific. However, it stands uncontradicted and discloses effort to discover the testimony prior to the trial. The court took testimony respecting the extent to which plaintiff had sought to get the information which eventually she produced and, though it is patent that her efforts were more numerous and more determined after her evidence had been discredited than before, we are satisfied that such diligence as was requisite under the circumstances was observed by her prior to her trial.

We hold that the court erred in not granting plaintiff's motion for a new trial.

The first and third assignments of error are well made.

The cause will be reversed and remanded for a new trial upon the issue of the right of defendant to an award of alimony, and, if so, the amount thereof.

MILLER, PJ, CONN, J, concur.