The STATE of Ohio, Appellant,

v.

PHELPS, Appellee.

[Cite as *State v. Phelps* (1995), 100 Ohio App.3d 187.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66804.

Decided Jan. 17, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Jack Hudson* and *Charles See,* Assistant Prosecuting Attorneys, for appellant.

*David L. Doughten,* for appellee.

---

JAMES M. PORTER, Judge.

Plaintiff-appellant state of Ohio appeals from the trial court's *in limine* ruling that a common-law marriage existed between defendant-appellee Larry Phelps and his co-defendant Laura Dumchas, a.k.a. Laura Phelps, a.k.a. Laura LaFlore (herein "Laura"). The state contends that the trial court's ruling destroys its murder case against defendant Larry Phelps by preventing the state from compelling Laura to testify against Larry. We find no error and affirm the trial court's ruling.

On June 2, 1993, defendant and Laura were indicted for the aggravated murder of Merle Johnston. On November 1, 1993, defendant filed a motion *in limine* to exclude the testimony of Laura pursuant to Evid.R. 601(B).

On November 8, 1993, the state filed a motion for separate trial of co-defendant Laura, which was granted. The state, in its motion, stated its intention to introduce "numerous statements made by Laura Dumchas," which directly implicated the defendant in the murder.

An evidentiary hearing was held, and witnesses were called by both sides. Attorneys for Laura were also present at the hearing. Testimony was given concerning pretrial statements made to police by Laura, which apparently led to the indictment of the co-defendants.

Attorneys for Laura alleged that an agreement for immunity had been reached with the state in exchange for her testimony against defendant. Conflicting evidence was presented as to the existence of any agreement and as to whether Laura's prior statements were given under immunity.

At the conclusion of the hearing, the court concluded that the two were married at common law, that defendant could not claim the spousal privilege, but that Laura could elect to testify against defendant if she chose. The court's journal entry states as follows:

"Court rules that common law marriage existed between Laura Dunchas-Phelps [*sic*] and Larry Phelps between June 1980 and September 1988. Court further finds that that [*sic*] a common law marriage exist [*sic*] between Laura Phelps and Larry Phelps after January 29, 1991 until the present time. Motion in limine to exclude testimony of Laura Phelps is overruled on grounds that under Rule 601 Laura Phelps may elect to testify and any act on [*sic*] conversation between Larry Phelps and Laura Laura [*sic*] Phelps that occured [*sic*] in presence of alleged victim would not qualify as 'privileged communication'."

The state appealed the order of the trial court pursuant to Crim.R. 12(J). The state argues that the trial court's decision has "destroyed" its case against defendant by preventing the state from compelling Laura to testify against Larry Phelps. The state also claimed that Laura is no longer cooperating and that without her testimony the state cannot make its case against Larry Phelps. This appeal ensued.

The state is in effect arguing that the trial court's journal entry is equivalent to the grant of a motion to suppress the testimony of Laura. This court has held that when a court treats a motion *in limine* as a final ruling on the question of admissibility of evidence, the ruling is equivalent to the grant of a motion to suppress and that a final appealable order lies. *State v. Fewerwerker* (1985), 24 Ohio App.3d 27, 31–32, 24 OBR 49, 53–54, 492 N.E.2d 873, 876–877; *State v. Liberatore* (Dec. 8, 1983), Cuyahoga App. No. 46784, unreported, 1983 WL 2880.

Two witnesses testified for the defense, the defendant himself and George Baynes, the Emir of Security for the Islamic Nation, who kept records of defendant's marriage.

Defendant testified that he had been married to Laura on two occasions in the Islamic faith. He stated that they were first married in May 1980 before an Imam or Islamic minister. A marriage contract in their Islamic names was registered with the church. Witnesses signed the contract. Vows were taken at the ceremony. Defendant had two children with Laura. They lived together and had joint checking and savings accounts. Their mail was received at a common address. The two were formally divorced on September 9, 1988, pursuant to a

common pleas court decree that found "that the parties were married as alleged, and that two children * * * were born as issue of this marriage."

On January 23, 1991, defendant testified, they were married again. Another Islamic wedding certificate was filed. Witnesses watched the formal wedding ceremony in which vows were taken. Again, they took up a joint residence, maintained joint checking and savings accounts, and received joint bills. They held themselves out to the community as husband and wife.

Documents presented at the evidentiary hearing showed that Laura went by "Laura Phelps" in January 1991 through 1993. Bank statements from September 1991 were in the name of Laura Phelps, gas bills from 1992 were in the name of both Larry and Laura Phelps. Numerous documents were also presented from 1992 signed by Laura Phelps. She went by Laura Phelps at her place of employment since January 1991 and paid her rent in June 1991 as Laura Phelps.

Six children presently reside with Laura. Two are classified as her stepsons with Larry Phelps as their father. Defendant claimed they were still married at the time of the present hearing and intended to stay married.

The other witness, George Baynes, also known as "Isa Yusuf," testified that for thirteen years he had been the Emir of Security for the 26th Zone of the Islamic Nation, including Cuyahoga County.

Baynes knew the defendant and his wife, Laura. He was aware that they were married. The Islamic community recognized the marriage. Baynes testified that he was notified of all weddings and births. He identified the marriage certificates brought to the hearing by defendant as being legitimate marriage certificates in their faith. He interpreted the Arabic certificates for the trial court.

The state offered the testimony of Sherri Eck that she was married to the defendant in the 1980s. She testified to a copy of the divorce decree. She also used the name "Phelps" at the time of the hearing.

Rosemary Welsh from the Department of Human Services testified for the state that Laura had lied on her support forms. Initially Laura, who went by the name of "Laura Dumchas," did not acknowledge that she was married to the defendant in her forms. However, in August 1991, Laura did change her name to Mrs. Phelps from Dumchas. She made a special trip to the welfare department to change her record.

At the hearing, the defense argued that Laura could not testify against her husband, since they were married in the eyes of the Islamic faith. Laura apparently chose not to testify against the defendant due to her unresolved immunity negotiations and a fear that any statement on her part would serve as a waiver of her spousal privilege.

The state argues that the defendant was a person of questionable character and a liar. His prison record and previous divorces were cited. Nevertheless, the court found defendant and Laura were married at common law.

The state's sole assignment of error states as follows:

"The court erred as a matter of law, when it found that Larry Phelps and Laura Dumchas aka Leflore [sic] aka Phelps were married under the common law."

Witness competency is governed by Evid.R. 601, which reads in relevant part as follows:

"Every person is competent to be a witness except:

" * * *

"(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:

" * * *

"(2) The testifying spouse elects to testify."

Spousal privilege is governed by R.C. 2945.42. "R.C. 2945.42 confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during coverture, unless a third person was present or one of the other specifically enumerated exceptions contained in the statute is applicable." *State v. Rahman* (1986), 23 Ohio St.3d 146, 23 OBR 315, 492 N.E.2d 401, syllabus.

In determining whether Laura may testify, both Evid.R. 601 and R.C. 2945.42 must be examined. Evid.R. 601(B) is a rule of evidence and, as such, it supersedes the conflicting portions of R.C. 2945.42 dealing with spousal competency.

Spousal privilege is governed by Evid.R. 501, which provides:

"The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience."

"[Evid.R.] 601(B) supersedes R.C. 2945.42 as to spousal competency, but not as to spousal privilege." *Rahman, supra,* at 148, 23 OBR at 317, 492 N.E.2d at 404; *State v. Mowery* (1982), 1 Ohio St.3d 192, 193, 1 OBR 219, 220–221, 438 N.E.2d 897, 898.

In *Mowery,* the court held in the syllabus:

"1. R.C. 2945.42 and Evid.R. 601 do not render the spouse of an accused incompetent to testify against the accused with respect to a crime committed against a third person, when such crime is part of one continuous transaction or happening which culminates in offenses against the third party and the spouse.

"2. An accused may not assert a privilege under R.C. 2945.42 to preclude a spouse from testifying with respect to a crime committed against a third person, where the crime is committed in the known presence of such third person, as well as in the presence of the testifying spouse."

Therefore, since Evid.R. 501 deals with privilege and Evid.R. 601(B) deals with witness competency, spousal incompetency is separate from spousal privilege. *State v. Savage* (1987), 30 Ohio St.3d 1, 4, 30 OBR 11, 13, 506 N.E.2d 196, 198 ("Having demonstrated the uniqueness of the two rules, it becomes apparent that spousal incompetency is not subsumed within spousal privilege."). Thus, even though Laura's testimony is not privileged pursuant to R.C. 2945.42, she may still be incompetent to testify pursuant to Evid.R. 601(B). Evid.R. 601(B) contains several exceptions to spousal incompetency (crime against a spouse or child), none of which applies in the instant case. Consequently, in the present case, if Laura is the common-law wife of defendant, she is generally incompetent to testify unless she elects to testify under Evid.R. 601(B)(2).

Therefore, the issue on this appeal turns on a factual determination, *i.e.,* whether the defendant and Laura were married at common law.

Although common-law marriages were prohibited in Ohio by statutory amendment after October 10, 1991, R.C. 3105.12(B)(1), common-law marriages that occurred prior to that date would continue to be recognized. R.C. 3105.13(B)(2). See *Lyon v. Lyon* (1993), 86 Ohio App.3d 580, 621 N.E.2d 718. Common-law marriages that occurred prior to October 10, 1991 remain valid unless terminated by death, divorce, dissolution of marriage, or annulment. *Id.*

The Ohio Supreme Court set forth the factors in *State v. DePew* (1988), 38 Ohio St.3d 275, 279, 528 N.E.2d 542, 549 required for recognition of a common-law marriage: "(1) an agreement of marriage *in praesenti*; (2) cohabitation as husband and wife; and (3) a holding out by the parties to those with whom they normally come into contact, resulting in a reputation as a married couple in the community."

There was sufficient evidence before the trial court to sustain its conclusion that a common-law marriage existed between defendant and Laura. We are mindful of the limited nature of our review in cases such as this. In *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174, we recently stated:

"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."

■ The defendant testified that he and Laura remarried. The marriage was recognized by the Islamic Nation. The ceremony was conducted in a manner consistent with Islamic ceremonies. The marriage certificate in question displayed signatures from witnesses at the ceremony. The Imam who conducted the ceremony signed the certificate. It is a formalized ceremony designed as a rite to hold couples out as being married in the community. The testimony of the Islamic minister established the procedures required in the Islamic community to become married, and that the defendant and Laura complied with them. Proof that a ceremonial wedding has been performed allied with a holding out as husband and wife for a period of time is sufficient to prove marriage under R.C. 3105.12. *Kontner v. Kontner* (1956), 103 Ohio App. 360, 3 O.O.2d 384, 139 N.E.2d 366.

The checking and savings accounts were made in both names; the bills were made out to both parties; the two held themselves out as being husband and wife in the community. There is no evidence that the two did not intend to stay married.

The state's own witness offered some corroboration for the theory that Laura was married to defendant. Rosemary Welsh of the Department of Human Services testified that Laura made a special trip to the department to change her name from Dumchas to Phelps on August 21, 1991.

■ Although the prosecutor challenges whether the defendant's role as a member of the Islamic faith, his previous criminal history, and his conflicting statements were bona fide, that was a question of fact for the trial court to resolve. The credibility of witnesses is primarily for the fact finder. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 367, 227 N.E.2d 212, 213. There was sufficient evidence to establish the common-law marriage under Islamic law by clear and convincing evidence. There was no evidence to rebut the documentary evidence of the divorce decree, the joint billing and checking account arrangements, and the Islamic marriage certificates.

The trial court, as the trier of fact, must judge the credibility of witnesses and weigh the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. A reviewing court will not reverse the trial court on the weight of the evidence where there is substantial, credible evidence to support the trial court's decision. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304. We must defer to the trial court's judgment and ruling.

The state's assignment of error is overruled.

Order finding common-law marriage affirmed.

*Judgment affirmed.*

JAMES D. SWEENEY, P.J., and NUGENT, J., concur.