THE STATE OF OHIO, APPELLANT, *v.* MOWERY, APPELLEE.

[Cite as State *v.* Mowery (1982), 1 Ohio St. 3d 192.]

(No. 81-1607—Decided August 11, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Mr. Alan C. Travis,* for appellant.

*Thomas M. Tyack & Assoc. Co., L.P.A.,* and *Mr. Thomas M. Tyack,* for appellee.

KRUPANSKY, J. The issue certified to this court is whether R.C. 2945.42 and Evid. R. 601(B) allow a spouse to be a competent witness in a criminal prosecution against the other spouse as to a crime against a third person, not a child of either spouse, where the crime is committed in the presence of the third person, as well as in the presence of the testifying spouse. We conclude the relevant authority does permit a spouse to testify in such a situation, and therefore, we must reverse the judgment of the Court of Appeals in part.

In resolving the instant controversy one must first trace the evolution of two very distinct concepts relevant to our inquiry, viz., (I) competency and (II) privilege.

## I.

In *United States* v. *De Lucia* (C.A. 7, 1958), 256 F. 2d 487, the United States Court of Appeals stated, at page 491, as follows:

" 'Competency,' in the law of evidence, is the presence of those characteristics, or the absence of those disabilities, which render a witness legally fit and qualified to give testimony in a court of justice * * *."

At common law, one qualification dealing with competency prohibited a party to a lawsuit from testifying in his own behalf, due to his obvious interest in the action. An extension of this concept rendered a wife incompetent to testify in a proceeding where her husband was a party. The wife's incompetency arose from the marriage, whereby the husband and wife were legally transformed into a single entity, with the wife losing any separate and personal legal existence.

Sir William Blackstone conveyed the tone of the wife's position as a chattel during marriage when he wrote in Volume 1 of his Commentaries on the Laws of England (1765), at page 442:

"By marriage, the husband and wife are one person in law: that is, the

very being or legal existence of the woman is suspended during marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and *cover,* she performs everything; and is therefor called in our law — french, a *feme covert* * * *, or under the protection and influence of her husband, her *baron* or lord; and her condition during marriage is called her *coverture.* * * * For this reason, a man cannot grant anything to his wife, or enter into covenant with her: for the grant would be to suppose her separate existence; and to covenant with her, would be only to covenant with himself * * *."

When Blackstone said that by marriage the husband and wife were one person in law, he meant just that and the husband was that one person.

In view of this merging it was determined allowing a wife to testify in an action in which her husband was a party was, in essence, allowing the husband to testify, which was forbidden.

Today, however, many of these archaic principles have been superceded by more modern logical concepts. Women are no longer considered chattels and have through various movements in history attempted to gain equality with men. The goal of equality has by no means been achieved; however, hopefully by the constant application of logic by rational thinking individuals these medieval anachronisms will be totally surmounted.

In many jurisdictions, this common law rule declaring a spouse absolutely incompetent to testify against her husband was supplanted in varying degrees by statute. In Ohio, R.C. 2945.42, as effective June 13, 1975, provided in part:

"* * * Husband and wife are competent witnesses to testify in behalf of each other in all criminal prosecutions, and to testify against each other in all actions, prosecutions, and proceedings for personal injury of either by the other, bigamy, or failure to provide for, neglect of, or cruelty to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age. A wife may testify against her husband in a prosecution under Sections 2903.11 to 2903.13, 2909.21, or 2191.22 of the Revised Code for cruelty to, neglect of, or abandonment of such wife. * * *"

Here we see only some of these archaic concepts crumbling and the wife emerging at least as a partial individual with thoughts and feelings of a separate person competent to testify against her husband when his wrath or abuse is directed against her or their children.

The above-quoted portion of R.C. 2945.42 has been superceded by Evid. R. 601, effective July 1, 1980, which states in part:

"Every person is competent to be a witness except:

"* * *

"(B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either. * * *"[1]

---

[1] Evid R. 601(B) extends a spouse's competency further than R.C. 2945.42 as it allows such spouse to testify when the other spouse commits a crime against the children *of either,* as opposed

A more extensive reading of Evid. R. 601[2] reveals an underlying premise to deem everyone competent to testify subject to limited exceptions. Appellee contends, however, literally applying Evid. R. 601(B) to the instant case precludes Mrs. Mowery from testifying as to the aggravated murder or aggravated burglary charges, as they were crimes against Laughlin, and not "crimes against the testifying spouse." Considering the rationale behind the adoption of the rule, as discussed above, and its erosion through the years, one quickly realizes how illogical a literal application of Evid. R. 601(B) would be in the instant action.

An individual is no longer generally incompetent to testify in his own behalf. It seems, therefore, the circumstances where a spouse is prohibited from testifying for or against his or her spouse should be narrowly defined. As stated by the United States Supreme Court in *Trammel* v. *United States* (1980), 445 U.S. 40, 52:

"* * * Nowhere in the common-law world — indeed in any modern society — is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being. Chip by chip, over the years those archaic notions have been cast aside so that '[n]o longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas.' *Stanton* v. *Stanton*, 421 U.S. 7, 14-15 (1975)."

Mr. Mowery took the stand and testified in his own behalf, and yet, he urges this court to confine Mrs. Mowery's testimony to the facts pertaining only to the crime of attempted murder perpetrated against her, despite Mrs.

---

to crimes committed against *their children.* Still it is clear Evid. R. 601(B) does not go far enough for it continues to insulate an individual from the spouse's testimony when the crime is perpetrated against the children of others, *e.g.,* nieces, nephews, neighbors' children, etc.

[2] Evid. R. 601 provides:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly and;

"(B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either and;

"(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university.

"(E) As otherwise provided in these rules."

Mowery's obvious willingness to testify as to all three counts.[3] It is undisputed Mrs. Mowery was competent to testify as to the three shots fired by appellee at her which resulted in the attempted murder charge. Once it is established Mrs. Mowery is competent to testify as to the second, fourth and fifth shots fired by the appellee, it would be ludicrous to fabricate a justification for excluding Mrs. Mowery's testimony about the first and third shots, or the mechanics of appellee's entrance into the Laughlin residence. These three crimes constitute *one continuous transaction* or happening culminating in offenses against two individuals. The three offenses were not well-defined and separate, but rather, were overlapping and intertwined. Any attempt to extricate testimony from Mrs. Mowery relating only to the attempted murder charge would be highly artificial in view of the instant facts.

Evid. R. 102, dealing with the purpose and construction of the Ohio Rules of Evidence, states in part:

"The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. * * *"

In the present cause the only reasonable way to interpret Evid. R. 601(B) in keeping with the purpose announced in Evid. R. 102 is to determine it permits Mrs. Mowery to testify as to *all* the crimes committed in her presence on the morning of June 30, 1979. To adopt the stilted reading of Evid. R. 601(B) proposed by the appellee, on the other hand, thwarts any attempts to ascertain the truth and increases the possibility of an unjust, rather than a just, result.

The New Jersey Supreme Court was faced with a very similar situation in *State* v. *Briley* (1969), 53 N.J. 498, 251 A. 2d 442, in which the defendant, in a single transaction, assaulted his spouse and killed his spouse's paramour. In interpreting language quite similar to Ohio Evid. R. 601(B)[4] the New Jersey Supreme Court, at pages 506-507, held:

"* * * Sensibly construed this language does not restrict the testimony of a wife against a husband to the particular criminal action in which she alone is the victim of his crime. If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality

---

[3] Mrs. Mowery's alleged incompetence to testify in this instance, despite the fact her husband did testify in his own behalf and despite her obvious willingness to testify, is one more indication demonstrating we are still haunted by medieval concepts of competence personifying that women have not yet achieved equality.

[4] The New Jersey Supreme Court in *State* v. *Briley, supra,* was construing New Jersey Rule of Evidence 23(2) which provides:

"The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant."

of the integrated incident and formal charges are made against the husband for some or all of the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding."

While the holding of the New Jersey Supreme Court has no precedential value as to our decision, we do feel the conclusion reached in the *Briley* opinion represents the most reasonable approach, as well as reflecting what we conclude to be the intent of R.C. 2945.42 and Evid. R. 601(B). This approach was also summarized in Annotation, 36 A.L.R. 3d 820, where the various reasons asserted by courts for allowing adverse spousal testimony under circumstances such as presented herein was explained thusly at pages 822-823:

"Where the prosecution of the defendant included the offense against his or her spouse, as well as the offense against a third person arising from the same transaction, courts have held that the testimony of the defendant's spouse is admissible. Among the various reasons given by the courts for allowing the defendant's spouse to testify where such testimony might concern the prosecution of the defendant for an offense committed against a third person were that the spouse was one of the victims of the offense; that the offense against the spouse was still being committed when the offense against the third person was committed; that the offense against the spouse and the ones against third persons were so closely related in time as to be part of the *res gestae;* that the particular statutory language did not limit the spouse's testimony to cases where the spouse alone was the victim of the particular criminal action, the more important public policy under the circumstances was to make testimony available, and the aim of the state's rules of evidence was to make competency the rule and exclusion the exception; and that the spouse's testimony related to the entire incident, and none of it was shown to relate exclusively to the count charging defendant with the offense against the third person."

In view of all of the above, we feel the trial court was correct in finding Mrs. Mowery competent to testify as to all of the crimes which transpired during the period at issue.

## II.

The next issue for determination is whether the appellee may successfully assert a privilege to exclude his wife's testimony as to the aggravated murder and aggravated burglary. The second portion of R.C. 2945.42, pertaining to privilege, provided:

"* * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in

case of personal injury by either the husband or wife to the other, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under eighteen years of age or their physically or mentally handicapped child under twenty-one years of age, or neglect or abandonment of such wife under such sections.''

Once again, the traditional justification underlying this spousal privilege rule is relevant to the proper disposition of this case. This court succinctly set forth the reason generally asserted for this privilege, as well as a rational exception to the rule, in *State* v. *Antill* (1964), 176 Ohio St. 61, 64 [26 O.O.2d 366], as follows:

"In some instances, the law feels that another interest is sufficiently important to warrant an exception to this duty to give testimony. Thus, *to promote marital peace* there is a privilege not to disclose in court confidential communications between husband and wife. However, the basis for this privilege is lacking where a person is tried for assaulting his spouse. [Emphasis added.]

" '* * * it is an overgenerous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony. And if there were, conceivably, any such peace, would it be a peace such as the law could desire to protect? Could it be any other peace than that which the tyrant secures for himself by oppression?' 8 Wigmore, Evidence (1961), 242, 243, Section 2239.''

Therefore, while the achievement of marital peace and harmony is undeniably a laudable goal, it is unrealistic to believe it is an attainable goal under factual situations such as presented herein. This appellee shot his wife with a shotgun in the back, shoulder and face, essentially removing a large portion of her face. At the time of trial seven operations had been performed on Mrs. Mowery's face in an attempt to alleviate the damage inflicted by her husband. It seems obvious to this court that any marital harmony which may have existed between Mr. and Mrs. Mowery was surely destroyed by the five blasts from Mr. Mowery's shotgun, and not by any ruling of the judiciary.

Furthermore, as stated by the United States Supreme Court in *Trammel, supra,* at page 52:

"* * * When one spouse is willing to testify against the other in a criminal proceeding * * * there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace.''

In addition to the glaring absence in this case of any marital harmony for the court to foster, a simple reading of R.C. 2945.42 also leads one to the conclusion that the appellee should be precluded from asserting a spousal privilege. As set forth above, the second portion of R.C. 2945.42, pertaining to privilege, provides that a spouse may testify as to acts "done in the known presence or hearing of a third person competent to be a witness.''

Therefore, appellee's conduct, undertaken in the presence of Harley Laughlin, can not be said to have taken place within the sphere of marital confidentiality to be protected by the privilege rule of R.C. 2945.42.

Dealing with a factual situation very similar to the one found herein, the Fourth District Court of Appeals in *Locke* v. *State* (1929), 33 Ohio App. 445, concluded a wife, present at the time her husband shot and killed his mother-in-law, was competent to testify against her husband at trial and the privilege rule could not preclude her from so testifying. The First District Court of Appeals in *State* v. *Lewis, supra,* the case in conflict herein, cited the conclusion reached in *Locke, supra,* with approval and stated:

"* * * When the spouse's act is committed not in a confidential setting but in the presence of a third person, the state's interest in reaching the truth of a criminal charge prevails over the state's interest in maintaining marital relationships."

Relying upon this conclusion the court in *Lewis* maintained the defendant could not rely upon the privilege rule of R.C. 2945.42 in order to preclude his spouse from testifying as to acts done in the presence of a known third party, the victim.

The United States Supreme Court recently dealt with the privilege rule in the context of federal courts in the case of *Trammel* v. *United States, supra.* In *Trammel,* the court used a balancing test to determine "* * * whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Id.,* at 51. In reaching its decision the court, at page 50, noted:

"Testimonial exclusionary rules and privileges contravene the fundamental principle that ' "the public * * * has a right to every man's evidence." ' *United States* v. *Bryan,* 339 U.S. 323, 331 (1950). As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins* v. *United States,* 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)."

Applying this balancing test to the instant case it is clear there is no compelling "public good" to be served by the exclusion of any portion of Mrs. Mowery's testimony. Indeed, as this court recognized in *Antill, supra,* at page 64:

"* * * The wrongdoer not only injures his spouse but he also injures the public, and it is for his offense against the public that he is subject to criminal prosecution. When the injured spouse is a witness for the state his competency cannot be affected by his desires or fears. He must testify to protect the public. *Turner* v. *State* (1882), 60 Miss. 35, 45, 45 Am. Rep., 412."

In addition to all of the foregoing reasons, an additional basis exists for permitting Mrs. Mowery to testify as to the aggravated burglary. As indicated above, Evid. R. 601(B) makes the spouse a competent witness to

testify against the other spouse as to crimes committed against the testifying spouse. R.C. 2911.11, dealing with aggravated burglary, provides in pertinent part:

"(A) No person, by force, * * * shall trespass in an occupied structure * * * with purpose to commit therein * * * any felony, when any of the following apply:

"(1) The offender inflicts, * * * physical harm on another;

"(2) The offender has a deadly weapon * * * on or about his person * * *;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present."

There is no requirement in R.C. 2911.11 that a victim of an aggravated burglary must own or reside in the burglarized structure. As pointed out by Judge McCormac in his dissenting opinion in the Court of Appeals below:

"Had Laughlin not been present in the house and only the testifying spouse been present, there would still have been an aggravated burglary which would be a crime against her. * * * Therefore, even under the most technical reading of Evid. R. 601, aggravated burglary constituted a crime against the testifying spouse, and her testimony was admissible."

In sum, we conclude Mrs. Mowery is a competent witness, pursuant to R.C. 2945.42 and Evid. R. 601(B), to testify as to all the crimes taking place at the Harley E. Laughlin residence on the morning of June 30, 1979; and, the appellee may not assert the privilege rule of R.C. 2945.42 to preclude Mrs. Mowery's testimony as to the aggravated murder and aggravated burglary at issue.

Accordingly, the judgment of the Court of Appeals reversing appellee's convictions for aggravated burglary and aggravated murder is reversed and the convictions are reinstated, while the judgment affirming appellee's conviction for attempted murder is affirmed.

*Judgment affirmed in part
and reversed in part.*

SWEENEY, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C.J., W. BROWN and LOCHER, JJ., concur in part and dissent in part.

CELEBREZZE, C.J., concurring in part and dissenting in part.

Except for the docket number and case name, the circulating opinions in this case bear no resemblance to the cause that was certified to us by the Court of Appeals for review and disposition. While the majority's rhetorical treatment of the battle of the sexes from Adam and Eve to Mork and Mindy stupefies the reader for its ideological pronunciamentos, it fails to analyze the

critical consideration at bar — whether Evid. R. 601(B) renders Mrs. Mowery *incompetent* to testify against Mr. Mowery in his prosecution for the murder of Harley E. Laughlin.

If we begin our analysis with the precise wording of Evid. R. 601(B) — which is, I suppose, where most lawyers, laymen and even judges would advise us to begin — the conclusion is patently inescapable that Mrs. Mowery is not competent to testify in appellee's aggravated murder prosecution. Evid. R. 601 provides in pertinent part:

"Every person is competent to be a witness except: * * * (B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either and;"

Furthermore, the relevant portion of the Staff Note to Evid. R. 601 reads as follows:

"*Rule 601(B) Spouse Testifying*

"R.C. 2945.42 governed the competency of a spouse to testify in a criminal prosecution involving the other spouse and continues to govern the privilege accorded to a spouse. The concepts are to be distinguished. Rule 601 is directed to competency. Rule 501 is directed to privilege and is a general rule serving to maintain R.C. 2945.42 as to privilege. *Rule 601 (B) modifies R.C. 2945.42 as to competency.*

"R.C. 2945.42 provided that a spouse could testify in behalf of the other spouse in all criminal prosecutions. That concept is preserved by declaring all persons to be competent witnesses. R.C. 2945.42 provided that a spouse could not testify against the other spouse in a criminal prosecution, but could testify against the other in actions and proceedings, for personal injury of either by the other, bigamy, failure to provide for, neglect of, or cruelty to children under eighteen, twenty-one if mentally or physically handicapped. Additionally, the statute provided that a wife could testify against her husband in a prosecution for felonious assault, aggravated assault, assault, non-support of dependent, or endangering children based upon cruelty to, neglect of, or abandonment of the wife. Rule 601(B) is less restrictive than the statute was under the former practice. The rule establishes the absence of competence in a spouse to testify against the other spouse in a criminal prosecution with the broad exception of any crime against the testifying spouse or any crime against the children of either spouse. No age limit is set for such child, and the language is broad enough to encompass all adult children as well as minors.

"*Rule 601(B) supersedes R.C. 2945.42 as to spousal competency,* but not as to spousal privilege." (Emphasis added.)

Given this specific, unambiguous, straightforward language, the majority opinion, in concluding that Mrs. Mowery is competent to testify against her husband for the Laughlin murder, ends, like an O. Henry short story, with a surprise.

While I am fully cognizant of the criticism that the concept of spousal competency has received from the commentators, see, *e.g.,* McCormick on Evidence (2 Ed. 1972), Section 66, I am also constrained to point out that

whether or not the rationale of Evid. R. 601(B) is supportable is beside the point in this case. In its present posture, the case does not require us to pass upon the reasons for or wisdom of Evid. R. 601(B), but rather, to construe the rule as it is written. If the rule on spousal competency should be eliminated — as I think it should be — then the majority's *ad hoc* amendment of the rule, under the guise of judicial review, is not the legally appropriate mechanism by which to reform Ohio law on this point. Rather, pursuant to Section 5(B), Article IV of the Ohio Constitution,[5] this court, under its constitutional rulemaking authority, should redraft Evid. R. 601(B) and submit it to the General Assembly.

As this court recently ruled in *In re Hamil* (1982), 69 Ohio St. 2d 97, 104 [23 O.O.3d 151] (*per* Krupansky, J.):

"The courts in making decisions must keep the problems with which they deal in perspective. *The division of power as granted by the Constitution to the three branches of government must be kept in mind at all times.* * * * The courts, on the other hand, must interpret the law and must not legislate. If a conclusion other than that promulgated herein is required, the General Assembly must speak." (Emphasis added.)

Unfortunately, the majority opinion *sub judice* exhibits a distressing lack of comprehension of the concurrent power which this court and the General Assembly share for the promulgation — or amendment — of the rules of evidence. See Giannelli, The Proposed Ohio Rules of Evidence: General Assembly, Evidence, and Rulemaking, 29 Case West. Res. L. Rev. 16.

My final objection to the majority opinion concerns the confusion and uncertainty which it causes within the legal profession. As was recently observed in the *DeHart* v. *Aetna Life Ins. Co.* (1982), 69 Ohio St. 2d 189, 199 [23 O.O.3d 210]:

"*It has always been a point of bewilderment to me why so much time and money is expended and committees are appointed to formulate rules to facilitate the orderly and expeditious progression of cases through our court system, then the rules are ignored with impunity.* If the popular theory is to ignore the rules with impunity as the majority advocates, then dispense with the rules altogether. Why have them on the books? * * * The majority decision hardly fosters or encourages a strong, informed and learned bar.

"The majority opinion accomplishes not only the above stated results, but

---

[5] Section 5(B), of Article IV of the Ohio Constitution, in part provides: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

also accomplishes disillusionment and chaos within the legal profession." (Emphasis added.) (Krupansky, J., dissenting opinion.)

In my judgment, Evid. R. 601(B) should not be invalidated, in *ipse dixit* fashion, simply because the current justices of this court would have authored a different rule if they had been members of the Evidence Rules Advisory Committee or the Joint Select Committee of the General Assembly from 1975 through 1980. It is precisely this type of Kafkaesque judicial alchemy, where a reviewing court upholds some rules of evidence but not others, that encourages disregard for all the rules of evidence and foreshadows their future devitalization.

The bottom line, then, is that the majority opinion, in authorizing Mrs. Mowery to testify against her husband in his prosecution for the murder of Laughlin, is demonstrably incorrect, plainly disingenuous, intellectually dishonest and institutionally flawed. Since the majority unearths an exception which I cannot find in my copy of Evid. R. 601(B), I am unable to join in such an exercise of raw judicial power.

WILLIAM B. BROWN, J., concurring in part and dissenting in part. I am indeed heartened by the fact that this court has finally, as a majority, recognized the separate legal identity of women and has forever discarded the archaic and anachronistic unity principle which has long been employed to preclude a woman from enjoying the same full legal rights as are afforded her husband. I have long recognized and supported full legal rights for women (see my dissents in *Varholla* v. *Varholla* [1978], 56 Ohio St. 2d 269 [10 O.O.3d 403], and *Bonkowsky* v. *Bonkowsky* [1982], 69 Ohio St. 2d 152 [23 O.O.3d 188]), and I am glad to see that at least five of the present justices now join me.[6]

The majority in this case holds that spouses are competent to testify against each other because it soundly rejects the long-held doctrines that a wife is a chattel of her husband and that, by marriage, a husband and wife are one in the law. Since these are the very principles which underlie the doctrine of interspousal immunity and which were recently used by this court to uphold this antiquated doctrine (see *Bonkowsky, supra)*, it logically follows that this court, as it is now constituted, would now abolish the doctrine of interspousal immunity.

In my opinion, and paraphrasing the majority, there is no area of the law which begs more for the "constant application of logic by rational thinking individuals" than that of interspousal immunity. Of course, the General Assembly has the power to discard, once and for all, the anachronistic doctrine of interspousal immunity, and I urge them to do so. I also strongly urge the legal community to present the issue of interspousal immunity to this

---

[6] I would note that my colleagues have made slow but steady progress in this direction as evidenced by the 6-to-1 vote in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269 [10 O.O.3d 403], and a 4-to-3 vote in *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152 [23 O.O.3d 188].

court so that this doctrine can finally receive the burial it so rightfully deserves.

While I agree with the principles espoused in the majority opinion, I must nevertheless dissent, for I find them largely irrelevant and inappropriate to the resolution of the issues at bar. As discussed by Justice Locher and Chief Justice Celebrezze in dissent, Evid. R. 601(B) clearly renders Mrs. Mowery incompetent to testify in appellee's aggravated murder prosecution. I further concur in the dissenters' position that dissatisfaction with this rule is best remedied by amending the rule rather than by employing a strained judicial interpretation.

LOCHER, J., concurring in part and dissenting in part. Although I concur with the majority in its disposition of the aggravated burglary issue, I must dissent from that part of the court's decision which finds Mrs. Mowery competent to testify against appellee, her husband, as to the aggravated murder charge against him.

The language embodied in Evid. R. 601 is clear and unambiguous: "Every person is competent to be a witness except: * * * (B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either * * *." There is no room for interpretation; a spouse simply may not, as the trial court permitted in the case at bar, testify against the other spouse in a criminal proceeding where a crime against a third party is alleged.

I sympathize with the highly laudatory objectives of the majority, but I feel that this court has erred in its selection of a means to effectuate the desired end. This court is responsible, subject to the veto power of the General Assembly, for enacting rules, including those of evidence, to govern procedure in the state court system. I suggest that it is in this capacity alone that we may properly act to remedy the apparent injustice that has resulted from the present wording of Rule 601.

We should not hesitate to mount a direct assault on the rule of procedure that has spawned this controversy. Indeed, we are empowered to and must do so. Clearly, the proper amendment or modification of Rule 601 is a vastly preferable alternative to the option taken by the court — a blatant disregarding of the rule's present language. The latter approach can only lead to the diminution of the force and effect of all court-enacted rules in the eyes of both the legal community and the general public.