THE STATE OF OHIO, APPELLANT, *v.* FEWERWERKER, APPELLEE.

(Nos. 48743 and 48744—Decided April 25, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Thomas Sammon,* for appellant.

*Levin & Levin Co., L.P.A., Jack M. Levin* and *Dennis P. Levin,* for appellee Jacob Fewerwerker.

KRUPANSKY, J. The state of Ohio is appealing the trial court's decision that appellee's wife, the only eyewitness to the crime, is not competent to testify against her husband at this trial for the aggravated murder of Paul Roth. Appellee was indicted on one count of aggravated murder with gun specification of Paul Roth, his wife's father, under R.C. 2903.01, and one count of felonious assault with gun specification of Sharon Fewerwerker, his wife, under R.C. 2903.11.[1]

Appellee moved to have his wife disqualified from testifying at his trial for the murder of Paul Roth under Evid. R. 601(B) on the ground of spousal incompetency. On March 24, 1984, the trial court held a voir dire hearing of Mrs. Fewerwerker to determine the above issue. The trial court found Mrs. Fewerwerker is not competent to testify against appellee at this trial under Evid. R. 601(B).

Appellant brings this appeal pur-

---

[1] Sharon Fewerwerker's competency to testify against her husband, the appellee, in his trial for the felonious assault against her is not at issue in this appeal.

suant to Crim. R. 12(J)[2] and R.C. 2945.67(A).[3] Appellant relies on this court's holding in *State* v. *Liberatore*[4] (Dec. 8, 1983), Cuyahoga App. No. 46784, unreported, for the proposition that the trial court's ruling on appellee's motion *in limine* is equivalent to granting a motion to suppress evidence.

Sharon Fewerwerker and Jacob Fewerwerker were married on June 6, 1982. In July 1983, they separated and Sharon Fewerwerker went to live with her father, Paul Roth, at his home in Cleveland Heights. Mrs. Fewerwerker, and the couple's ten-month-old son were still living at Roth's home on the day the appellee shot Paul Roth.

On Sunday morning, February 26, 1984 at approximately 7:30 a.m., appellee came to Roth's house to visit his infant son. Sometime after the appellee arrived at the house, the victim, Paul Roth, came downstairs to the kitchen to prepare stew. The appellee, Mrs. Fewerwerker, Roth, and the infant were the only persons in the house on the morning of February 26, 1984. The appellee, Sharon Fewerwerker, and the baby stayed in the living room adjacent to the kitchen except for those times when the baby crawled into the kitchen and she and appellee went to retrieve him. At one point Mrs. Fewerwerker and the appellee went into the kitchen to get their son and appellee suddenly stamped his foot and shot Paul Roth in the back of the head and elsewhere while Roth was standing at the sink with his back to them. Sharon Fewerwerker was standing approximately one foot away

---

[2] Crim. R. 12(J) reads in pertinent part:

"The state may take an appeal as of right from the granting of a motion for the return of seized property, or from the granting of a motion to suppress evidence if, in addition to filing a notice of appeal, the prosecuting attorney certifies that: (1) the appeal is not taken for the purpose of delay; and (2) the granting of the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed."

[3] R.C. 2945.67(A) reads:

"A prosecuting attorney, village solicitor, city director of law, or the attorney general may appeal as a matter or [of] right any decision of a trial court in a criminal case, or any decision of a juvenile court in a delinquency case, which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to sections 2953.21 to 2953.24 of the Revised Code, and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case."

[4] In *State* v. *Liberatore, infra,* this court reasoned as follows in holding the motion *in limine* was truly a motion to suppress evidence in that case:

"Rather, defendant-appellee in effect sought the total suppression of Agent Riggio's testimony concerning Mata's statement, requesting that the court declare the testimony and reference to Mata's statement *inadmissible prior to the commencement of trial* and the exploration of every avenue of admission. The trial court in turn did not merely caution appellant to avoid any reference to Mata's statement until admission was resolved *during* trial, but finally resolved the issue of inadmissibility at the pretrial stage, as would be done with a motion to suppress. Thus, appellee's seeking to exclude Mata's statement, as related through Riggio's testimony, was a classic example of a motion to suppress the evidence on the constitutional grounds that admitting the statement would violate defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

"Therefore, under the facts presented in the instant case, the *motion in limine* was truly a motion to suppress and, as such, a final appealable order under Crim. R. 12 (J). Accordingly, appellee's motion to dismiss the appeal is overruled." *Id.* at 7. (Emphasis *sic.*)

from the appellee when he killed her father.

Immediately after the shooting, Mrs. Fewerwerker went to the phone to call for help and testified as follows:

"A. I was screaming, and I remember at that point my husband still had the gun on him. I went and I picked up the phone to get some help. The second I picked up the phone, I put it down, because he had a gun and I was afraid. I stepped back and then he swung the gun on me.

"Q. Did he see you pick the phone up?

"A. Yes.

"Q. What did he do when he saw you pick the phone up?

"A. He came after me with the gun.

"Q. What did he do with that gun?

"A. He pointed the gun at my chest and the baby and he said in a very angry tone, 'Give me that baby,' and I hesitated and then I did give him the baby."

She gave the infant to the appellee who then returned the child to her and told her to dress the baby. Sharon Fewerwerker left the kitchen, grabbed her son's jacket from the dining room and ran to a neighbor's home. Appellee ran after her at first, then he returned to his father-in-law's house.

Sharon Fewerwerker filed for divorce since the differences between her and her husband are irreconcilable. The divorce proceedings were still pending at the time the voir dire examination was held.

I

Appellant raises one assignment of error on appeal:

"The trial court erred in declaring the appellee's wife incompetent under Evidence Rule 601(B) to testify as a state's witness against her husband at his trial for the aggravated murder of Paul Roth."

Appellant's assignment of error is well-taken.

The issue before this court is whether Sharon Fewerwerker is competent to testify against her husband, the appellee, in his trial for the murder of her father. In order to properly resolve this issue, a brief look at the origin of the concept of spousal incompetency may be helpful. At common law spousal incompetency barred all testimony, during the marriage, by the witness spouse concerning all events, even those which occurred prior to the marriage. At common law an individual was not permitted to testify on his own behalf in a lawsuit to which he was a party because of his obvious self-interest in the outcome of the case. Furthermore, at common law, husband and wife were one single legal entity by marriage and the husband was that one single legal entity. Since the husband could not testify in a lawsuit to which he was a party neither could his wife testify in that same lawsuit since they were one person in law. Permitting the wife to testify was the equivalent of allowing the husband to testify. See *Locke* v. *State* (1929), 33 Ohio App. 445.

Today the general rule is an individual is competent to testify in a lawsuit to which he is a party. Furthermore, husband and wife are no longer viewed as a single legal entity for all purposes. Evid. R. 601(B) and R.C. 2945.42 demonstrate the erosion of the early common-law rule which absolutely prohibited a spouse from testifying for or against the other spouse. This trend of moving away from the fiction husband and wife are a single legal entity is more logical in our present-day society. Since an individual can now testify at his own trial, prohibiting the spouse from testifying leads to the absurd, illogical and ludicrous result that only one-half of that single legal entity can testify and not the other half.

Evid. R. 601 states in part:

"Every person is competent to be a witness except:

"* * *

"(B) A spouse testifying against the other spouse charged with crimes except crimes against the testifying spouse or the children of either * * *;"

The Ohio Supreme Court's holding in *State* v. *Mowery* (1982), 1 Ohio St. 3d 192, is the controlling law on the issue presently before this court. In paragraph one of the syllabus of *State* v. *Mowery, supra,* the court held as follows:

"R.C. 2945.42 and Evid. R. 601 do not render the spouse of an accused incompetent to testify against the accused with respect to a crime committed against a third person, when such crime is part of one continuous transaction or happening which culminates in offenses against the third party and the spouse."

In *Mowery, supra,* the defendant, armed with a shotgun, broke into the murder victim's home where the victim, Laughlin, and the defendant's estranged wife were asleep. They had heard the defendant break into the house; they arose to investigate the noise when the defendant entered and fired five shots at them killing the victim and severely injuring Mrs. Mowery. The defendant was convicted of aggravated murder, aggravated burglary, and attempted murder. On appeal the Court of Appeals for Franklin County held that the defendant's wife was competent to testify against her husband only to the crime of attempted murder which he committed against her. The Ohio Supreme Court reversed the court of appeals decision stating as follows:

"It is undisputed Mrs. Mowery was competent to testify as to the three shots fired by appellee at her which resulted in the attempted murder charge. Once it is established Mrs. Mowery is competent to testify as to the second, fourth and fifth shots fired by the appellee, it would be ludicrous to fabricate a justification for excluding Mrs. Mowery's testimony about the first and third shots, or the mechanics of appellee's entrance into the Laughlin residence. These three crimes constitute *one continuous transaction* or happening culminating in offenses against two individuals. The three offenses were not well-defined and separate, but rather, were overlapping and intertwined. Any attempt to extricate testimony from Mrs. Mowery relating only to the attempted murder charge would be highly artificial in view of the instant facts." *Mowery, supra,* at 196.

Similarly, in the case *sub judice,* the shooting of Paul Roth and the alleged felonious assault on Mrs. Fewerwerker were part of the same *res gestae*; the two criminal acts constituted one complete happening. The murder and the assault were in close proximity both in time and space. Appellee killed the victim while his estranged wife was at his side. When she immediately went to the phone to call for help the appellee then threatened her by pointing the gun at her and the baby demanding she give the child to him. After the appellee shot and killed Paul Roth, he turned, pointed the gun at his estranged wife when she attempted to telephone; obviously he did not want her to call the police to get help for her father or to report the crimes. Thus, both charges against appellee arose out of the same continuing incident, *i.e.,* the murder of Paul Roth. Just as "[t]he three offenses were not well-defined and separate, but rather, were overlapping and intertwined" in *Mowery, supra,* so, also, are the two crimes committed in the case *sub judice* "one continuous transaction or happening culminating in offenses against two individuals." The facts of the case *sub judice* fall squarely within the first paragraph of the syllabus of *State* v. *Mowery, supra.*

In rendering its decision in *Mowery* the Ohio Supreme Court found the New Jersey Supreme Court's reasoning in

*State* v. *Briley* (1969), 53 N.J. 498, 251 A. 2d 442, very persuasive:

" '* * * Sensibly construed this language does not restrict the testimony of a wife against a husband to the particular criminal action in which she alone is the victim of his crime. If there is a *single criminal event* in which she and others are targets or victims of the husband's criminal conduct in the *totality of the integrated incident and formal charges are made against the husband for some or all of the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding.*' " (Emphasis added.) *Mowery* at 196-197, quoting *Briley* (53 N.J., at 506-507).

Although the case *sub judice* does address the issue of competency it does not encompass the issue of marital privilege. However, just a word to attempt to separate and clarify these two distinct and often confused concepts.

Privilege relates to the confidential communications between husband and wife and roots its origin in the public policy concern for promoting marital peace and harmony, not in the concept that husband and wife are one person in law. Marital privilege bars testimony concerning communications and acts done during coverture in the presence of the other spouse, but outside the known presence of third parties; unless privilege is waived, the spouse cannot testify to those privileged communications which occurred during marriage even after divorce. However, after divorce the rule of competency no longer bars the spouse from testifying against the other spouse concerning events which occurred during the marriage, unless they are privileged communications. In the case *sub judice,* the appellant's assignment of error addresses spousal competency, not marital privilege. The marital privilege cannot be asserted in the case *sub judice* since a third party, Paul Roth, was knowingly present at the time the act was committed. See *State* v. *Mowery, supra.* Our holding in the case *sub judice* deals with only spousal competency. See *Locke* v. *State, supra;* Jackson, C.J.'s dissent in *State* v. *Bristow* (Aug. 6, 1981), Cuyahoga App. No. 42576, unreported.

Finally, the general purpose of the Ohio Rules of Evidence as set forth in Evid. R. 102 supports the conclusions reached in this opinion; it states in pertinent part:

"The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. * * *"

The exclusion of Mrs. Fewerwerker's testimony is contradictory to these public policy considerations. The prosecutor's case is heavily dependent upon Mrs. Fewerwerker's testimony, since she was the only witness to the murder except for her ten-month-old son who is clearly not qualified to testify. Without Sharon Fewerwerker's testimony the truth will not be ascertained nor will the proceedings reach a just conclusion. The rule of spousal incompetency is an archaic rule which precludes the implementation of Evid. R. 102. It has ceased to serve a legitimate purpose; rather, the rule of spousal incompetency only functions to thwart justice.

Appellee's June 25, 1984 motion to dismiss appellant's appeal because the order from which appellant appeals is not a final appealable order is overruled.[5] The trial court's ruling on the motion *in limine* constitutes a final appealable order under the facts of the case *sub judice.* Like the motion *in*

---

[5] On August 28, 1984, appellee's motion to dismiss appeal was referred to the panel hearing the case on its merits.

*limine* in *State* v. *Liberatore, supra,* the motion *in limine* in the case *sub judice* is in all respects a motion to suppress since the trial court's ruling totally excluded Sharon Fewerwerker's testimony on the grounds of competency. The trial court's granting of the motion *in limine* "has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." Crim. R. 12(J). Since the motion *in limine* is truly a motion to suppress, the trial court's order is a final appealable order.

Appellant's assignment of error has merit.

The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

PRYATEL, J. concurs.

JACKSON, P.J., concurs in judgment only.

JACKSON, P.J., concuring in judgment only. I concur in the judgment of the court. My concurrence is based solely on the decision of the Supreme Court of Ohio in *State* v. *Mowery* (1982), 1 Ohio St. 3d 192.