DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, John Purvis, Jr., appeals the decision of the Medina County Court of Common Pleas, which found him guilty of kidnapping. This Court affirms.
 I. {¶ 2} On the evening of December 31, 2004, appellant and his wife Darlene were celebrating their wedding anniversary. At some point during the evening or early morning hours of January 1, 2005, the two began to argue and the encounter turned violent. The fighting stopped at some point and the two went to bed. When they woke up, Darlene waited for appellant to go into the kitchen and she went next door to seek help. Darlene phoned her mother from her neighbor's apartment and her mother called the police. When appellant learned that the police had been notified, he left the scene and fled to Lima, Ohio. Upon arriving at the scene, the police called for medical assistance for Darlene. Darlene was taken to the hospital for treatment.
 {¶ 3} Approximately twelve days later, appellant was found and arrested. Appellant was charged with one count of kidnapping, a violation of R.C. 2905.01(B)(2), and one count of abduction, a violation of R.C. 2905.02(A)(2). Appellant pled not guilty at his arraignment. On March 28, 2005, a hearing was held regarding various pre-trial motions filed by appellant to exclude evidence. The trial court granted appellant's motion to exclude statements made by his wife to the police, but denied his other motions, including his motion to exclude testimony from his wife Darlene, finding that no spousal privilege existed. The matter proceeded to trial before a jury after which the jury found appellant guilty of both charges. The State, acknowledging that kidnapping and abduction are allied offenses, chose to have appellant sentenced under the kidnapping statute. The trial court sentenced appellant to a term of imprisonment of three years. Appellant timely appealed his conviction, setting forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY REQUIRING THE ALLEGED VICTIM-WIFE TO TESTIFY AS A WITNESS FOR THE PROSECUTION, WHERE SHE INVOKED THE SPOUSAL PRIVILEGE NOT TO TESTIFY AGAINST HER APPELLANT-HUSBAND ABOUT THE CONFIDENTIAL COMMUNICATIONS AND ACTS BETWEEN THEM."
 {¶ 4} In his first assignment of error, appellant argues that the trial court erred in permitting the State to call Darlene Purvis, appellant's wife, as a witness when she attempted to invoke the spousal privilege not to testify against her husband. This Court disagrees.
 {¶ 5} Two different levels of protection exist for communications between spouses. State v. Vanhoy (June 22, 2000), 3d Dist. No. 7-2000-01. One is spousal competency, provided for in Evid.R. 601. Id. The other is spousal privilege, provided for in Evid.R. 501 and codified in R.C. 2945.42. Id. Appellant concedes that Darlene was competent to testify against appellant under Evid.R. 601. However, appellant contends that Darlene was protected by spousal privilege. Evid.R. 501 provides that matters of privilege shall be governed by statute and common law as interpreted by the state courts. R.C. 2945.42 codifies the spousal privilege in a criminal trial. Just as an exception to competency exists when the testifying spouse is the victim of the crime charged, R.C. 2945.42 contains an exception to privilege when the crime charged has been committed against the testifying spouse. Therefore, the question before this Court is whether the spousal privilege applied, thereby prohibiting Darlene's testimony.
 {¶ 6} In State v. Bryant (1988), 56 Ohio App.3d 20, defendant-husband was charged with kidnapping his wife. Defendant-husband attempted to prevent his wife from testifying against him by asserting the spousal privilege set forth in R.C.2945.42. In reaching its decision, the Sixth Appellate District stated:
"The United States Supreme Court has provided that the witness-spouse, rather than the defendant-spouse, is the holder of the privilege. See Trammel v. United States (1980),445 U.S. 40. However, many states, including Ohio, have maintained the rule that the privilege may be invoked by an accused so as to prevent a spouse from becoming a witness for the prosecution.
"Regardless of which spouse holds the privilege, the privilege is clearly based upon a policy of protecting confidences, and most courts require the element of confidentiality. See, e.g.,Blau v. United States (1951), 340 U.S. 332. This notion of confidentiality has been repeatedly adhered to in Ohio as well as in states with statutes similar to Evid.R. 601(B).
"* * *
"The Ohio Supreme Court has held that:
"* * * R.C. 2945.42 confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during [marriage] * * *." (Emphasis added.) State v. Rahman (1986),23 Ohio St.3d 146, 149.
"Several factors, including the nature of the message or the circumstances under which it was delivered, may destroy a claim that confidentiality was intended. McCormick, Evidence (3 Ed. Cleary Ed. 1984) 193, Section 80. For example, the Ohio Supreme Court has held that threats of bodily harm, being an obvious violation of marital duty, should not be privileged. State v.Antill (1964), 176 Ohio St. 61. In Antill, supra, the court found that when a person is tried for assaulting his spouse, the basis for the privilege, i.e., to promote marital peace, is lacking. Id. at 64.
"In State v. Mowery (1982), 1 Ohio St.3d 192, the Ohio Supreme Court adopted a balancing test to determine "* * * `* * * whether the privilege against adverse spousal testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice.' * * *" Id. at 199, quoting Trammel, supra, 445 U.S. at 51.
"In applying this test to the case sub judice, we note that the United States Supreme Court has held that certain privileges, grounded in substantial individual interests, may outweigh the public interest in the search for truth. United States v. Bryan
(1950), 339 U.S. 323, 331. Such privileges, however, should be narrowly construed and are accepted only to the "limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth. * * *" Elkins v. United States (1960), 364 U.S. 206, 234
(Frankfurter, J., dissenting).
"In the instant case, there is no `public interest' to be served by excluding Peggy Bryant's testimony. The alleged wrongdoer in this case has not only threatened harm to his wife, he has also acted against the public, "* * * and it is for his offense against the public that he is subject to criminal prosecution. When the injured spouse is a witness for the state [her] competency cannot be affected by [her] desires or fears. [She] must testify to protect the public. * * *" State v.Antill, supra, 176 Ohio St. at 64.
"In conclusion, we find that the threats and/or acts of appellee were not `confidential communications' within the purpose of the law." (Alterations sic.) Bryant,56 Ohio App.3d at 21-22.
 {¶ 7} Following the analysis set forth in Bryant, this Court finds that appellant's actions in the present case were not "confidential communications" within the purpose of the law.
 {¶ 8} R.C. 2945.42 lists certain offenses where the alleged victim-spouse may elect to testify in the prosecution of the defendant-spouse despite the existence of a spousal privilege. Appellant argues that because kidnapping is not specifically listed in R.C. 2945.42, the exception to spousal privilege exception found in R.C. 2945.42 is not applicable to the present case. In State v. Buttrom (Dec. 11, 1998), 1st Dist. No. C-970406, the First Appellate District rejected such an argument, saying:
"Therefore, he argues, the exception set forth in the privilege section of the statute would only apply in prosecutions for those specified offenses, which do not include violations of R.C.2909.03, the arson statute. We find this to be a tortured reading of the statute. The legislature did not so limit the section on privilege even though it could easily have done so, as it did in the section on competency."
See, also, Bryant, 56 Ohio App.3d at 22-23. This Court agrees with the above-mentioned courts that had the legislature wished to limit the application of R.C. 2945.42 to the specific offenses listed therein, it would have done so as it did in the section regarding competency.
 {¶ 9} Furthermore, appellant contends that the statutory exception to spousal privilege set forth in R.C. 2945.42 in cases of personal injury by either the husband or wife to the other is not applicable in this case because actual personal injury was not an essential element of kidnapping. R.C. 2945.42 provides, in pertinent part:
"* * * Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other * * *"
This Court is not persuaded by appellant's argument. R.C.2945.42 in no way provides that the injury to the testifying spouse must be an element of the crime of which the defendant spouse is charged. It is irrelevant whether Darlene suffered her injuries while she was actually restrained by appellant or whether she sustained injuries as a part of appellant's continuous course of conduct of which his restraint of Darlene was a part.
 {¶ 10} This Court finds that it was not error for the trial court to find that there was no valid claim of spousal privilege applicable in this case. Therefore, the trial court correctly admitted Darlene's testimony. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICTS, AND APPELLANT'S KIDNAPPING AND ABDUCTION CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In his second assignment of error, appellant argues that the evidence presented at trial was insufficient to support his convictions and said convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 12} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 {¶ 13} In State v. Roberts, this Court explained: "sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. (Emphasis omitted). Accordingly, this Court will first examine the issue of whether appellant's conviction was against the manifest weight of the evidence.
"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. Id.
 {¶ 14} Appellant was charged with kidnapping, a violation of R.C 2905.01(B)(2), which provides:
"No person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * *:
"Restrain another of his liberty[.]"
 {¶ 15} Appellant was also charged with abduction, in violation of R.C. 2905.02(A)(2), which states: "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 16} R.C. 2901.01(A)(1) defines "force" as: "* * * any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 17} The State called Ryan Holzheimer to testify. Mr. Holzheimer testified that he knew Darlene Purvis because she lived next door to his then girlfriend. Mr. Holzheimer stated that around noon on January 1, 2005, Darlene came over to his girlfriend's house and asked if she could use the phone. Mr. Holzheimer stated that Darlene's face was bloody and that she had duct tape on her side and on both ankles. Mr. Holzheimer said that the duct tape looked like someone had tried to tie her up and she had ripped it off. Mr. Holzheimer testified that Darlene appeared really upset and scared. Mr. Holzheimer stated that when he let Darlene in the apartment, she asked his girlfriend if she could use the phone.
 {¶ 18} Mr. Holzheimer further testified that Darlene told her mother that appellant had beat the "sh__" out of her and asked her mother to call the police. In addition, Mr. Holzheimer testified that Darlene said that appellant locked her in the bedroom all night and would not let her out and that he slammed her head against the table.
 {¶ 19} The State also called Officer Matt Casey of the Medina Police Department to testify on behalf of the State. Officer Casey testified that on the morning of January 1, 2005, he received a call to respond to a domestic dispute at the apartment occupied by appellant and Darlene Purvis. Officer Casey stated that upon entering the apartment, it was apparent that there had been some sort of physical altercation. Officer Casey testified that Darlene was covered with dried blood and that her shirt had been stretched out and was torn. Officer Casey also stated that he observed a piece of duct tape on Darlene's left calf. Upon examination, Officer Casey identified several photographs of the scene which depicted how the apartment looked when he arrived on the scene. Officer Casey also testified that he found a roll of duct tape on the headboard of the bed in the Purvis' bedroom. Officer Casey stated that a screwdriver was found on the bedroom floor by the door area and that there were fresh tool marks on the bedroom door consistent with the screwdriver.
 {¶ 20} Both the State and the defense called Darlene Purvis, appellant's wife, as a witness. Darlene testified that she and appellant fought during the early morning hours of January 1, 2005. Darlene testified that during the fight, appellant punched her in the eye and that she had a lot of bruises on her body. During the course of the State's examination of Darlene, she denied making most of the alleged contradictory statements to the police or others that the State asked her to verify and stated that she could not remember if specific events took place during the time period in question. However, when questioned about a clump of hair that the State introduced into evidence, Darlene did identify it as a clump of her hair that appellant jerked out of her head. Darlene also affirmed that clumps of her hair were found throughout her apartment. In addition, Darlene confirmed that appellant bound her legs with duct tape. However, Darlene denied that appellant kept her from leaving their apartment. When asked why she waited several hours to go to her neighbors and seek help, she did not have an answer. She did however, state that after she and appellant woke up on the morning of January 1, 2005, she followed appellant downstairs to the living room, and when appellant went into the kitchen where he could not see her, she left the apartment and went to a neighbor's apartment to call her mother.
 {¶ 21} Appellant chose to take the stand in his own defense. While testifying, appellant admitted to hitting his wife Darlene multiple times and to grabbing her by the hair and hurting her. Appellant also admitted that he bound Darlene's feet with duct tape.
 {¶ 22} After reviewing the entire record, this Court cannot say that appellant's convictions of kidnapping and abduction were against the manifest weight of the evidence. Although appellant and his wife presented multiple versions of what went on in their home on the date in question, both testified that appellant bound his wife with duct tape in an attempt to prevent her from leaving their home after he had badly beaten her. The record shows that Darlene did not leave the home to seek help until several hours after the physical violence had ended. Although Darlene testified that appellant did not prevent her from leaving earlier than she did, this Court does not find her testimony credible. Although appellant was not charged with a domestic violence crime, this is clearly a case involving domestic violence, and it is not unusual for the victim spouse of domestic violence to have a change of heart and therefore change his or her version of events when called to testify against their spouse at trial. Darlene testified at trial that she was very angry with appellant. Yet, something or someone prevented Darlene from leaving her apartment for several hours. Appellant's argument that the State failed to prove that appellant restrained his wife "by force, threat, or deception" is not substantiated.
 {¶ 23} Appellant's assertion that the State failed to prove that Darlene was restrained "under circumstances that create a substantial risk of serious physical harm to the victim" is also without merit. Under appellant's theory, a husband could severely beat his wife then restrain her liberty and not be guilty of kidnapping or abduction as long as he does not create a substantial risk of serious physical harm to her while attempting to restrain her or after he restrains her. However, R.C.2905.01(B)(2) does not require that the victim sustain the injuries while his or her liberty is being restrained or after having had his or her liberty restrained. The testimony and evidence presented at trial prove that Darlene sustained serious physical injuries as a result of being beaten by appellant. The beating took place as part of the course of conduct of appellant restraining her.
 {¶ 24} Accordingly, having found that appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Appellant's second assignment of error is overruled.
 III. {¶ 25} Appellant's assignments of error are overruled. The decision of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Whitmore, P.J. Boyle, J. concur.