OPINION
{¶ 1} Plaintiff-appellant Poland Township Board of Trustees (Township) appeals the jury verdict rendered in the Mahoning County Common Pleas Court for defendant-appellee Robert Swesey. This court must determine whether the trial court erred by denying the Township's motion for directed verdict on Swesey's counterclaims of wrongful discharge, estoppel, and due process and equal protection violations. This court is also asked to decide whether the jury's determination that a common-law marriage existed was against the manifest weight of the evidence. For the reasons stated below, the decision of the trial court is affirmed in part and reversed in part.
 STATEMENT OF FACTS {¶ 2} The Township hired Swesey in 1977 as a laborer in its road department. As a benefit for working for the Township, Swesey received health insurance. In 1984, Swesey met and began dating Ida Lewis. Later that same year, they shared a residence together. In November of 1988, Swesey modified his health insurance coverage from single coverage to family coverage to include benefits for Lewis, whom he designated as his spouse. Swesey did not inform the Township that he was designating Lewis as his spouse by a common-law marriage. In August of 1996, Swesey and Lewis were married in a civil ceremony in Mahoning County.
 {¶ 3} After the Township learned of the civil ceremony, it began investigating to determine if Swesey and Lewis were married when Swesey changed his health coverage to include Lewis. The Township decided to take disciplinary action against Swesey for the alleged fraudulent obtainment of family insurance coverage. The Township provided Swesey with written notification of the disciplinary charges against him. A pre-disciplinary conference was held in front of an arbitrator, which was chosen by the Township. After testimony and post hearing briefs, the arbitrator determined that Swesey and Lewis did not have a valid common-law marriage and, as such, the health insurance benefits for Lewis were obtained through a misrepresentation by Swesey of his legal marital status.
 {¶ 4} Given the arbitrator's finding, the Township demanded that Swesey reimburse it almost $23,000 for the difference between the single insurance premium and the family insurance premium for the time period of 1988 to 1996. Swesey refused to pay, which resulted in the Township terminating his employment.
 {¶ 5} The Township then filed suit on behalf of the taxpayers of Poland Township in Mahoning County Common Pleas Court to obtain the funds. Swesey counterclaimed asserting wrongful discharge, estoppel, and due process and equal protection violations. The case proceeded to a jury trial. During trial, the Township moved for directed verdict, which the trial court denied. (Tr. 706-713). Prior to jury deliberations, the Township renewed its motion for directed verdict, which the trial court also denied. (Tr. 872-873). The jury returned a verdict in favor of Swesey on the Township's claim against Swesey for the reimbursement of family insurance coverage. On Swesey's counterclaim against the Township, the jury rendered a verdict of $55,000 in past damages.[1]
The Township now timely appeals, raising three assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 6} "The trial court erred in denying Poland Township's motion for directed verdict (and motion for judgment notwithstanding the verdict) on defendant Robert Swesey's Counterclaims. (trial Tr. at 706-711.)"
 {¶ 7} The Township argues the trial court erred by failing to grant its motion for directed verdict or judgment notwithstanding the verdict (JNOV) on each of Swesey's counterclaims; wrongful termination, deprivation of due process rights, equal protection violations, and estoppel.
 STANDARD OF REVIEW {¶ 8} In reviewing a directed verdict motion and/or motion for judgment notwithstanding the verdict (JNOV), the evidence must be construed most strongly in favor of the nonmovant. Civ.R. 50(A)(4). A directed verdict and/or JNOV are improper if reasonable minds could come to different conclusions on any determinative issue. Id. Motions for either a directed verdict or JNOV test the legal sufficiency of the evidence. Therefore, such motions present a question of law even though in deciding such motions it is necessary to review and consider the evidence. Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90. An appellate court reviews questions of law de novo. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm, 73 Ohio St.3d 107, 108, 1995-Ohio-214.
 LAW AND ANAYSIS Wrongful Termination {¶ 9} It is undisputed that Swesey is an at-will employee. Accordingly, his employment is terminable at the will of either party, for any cause or no cause and a discharge without cause does not give rise to an action for damages. Collins v. Rizkana, 73 Ohio St.3d 65, 67,1995-Ohio-135. However, an exception does exist to the at-will employee doctrine, which has come to be known as a cause of action for "wrongful discharge." Id. at 68. Under this exception, an employer who wrongfully discharges an employee in violation of a clearly expressed public policy will be subject to an action for damages. Id. To establish a wrongful discharge claim, four elements must be proven. Kulch v. StructuralFibers, Inc., 78 Ohio St.3d 134, 151, 1997-Ohio-219. First, there must exist a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law. Id. (characterizing this first element as the clarity element). Second, dismissal under the alleged circumstances must jeopardize the public policy. Id. (characterizing the second element as the jeopardy element). Third, the employee's dismissal must be motivated by conduct related to the public policy. Id. (characterizing the third element as the causation element). Finally, there must be no overriding legitimate business justification for the dismissal. Id. (characterizing the fourth element as the overriding justification element). The clarity and jeopardy elements are questions of law to be determined by the court, and the causation and overriding justification elements are questions of fact for the jury. Id. Therefore, since the Township is arguing that it was entitled to a directed verdict or JNOV, our review is limited to the aforementioned clarity and jeopardy elements (questions of law).
 {¶ 10} Swesey failed to establish the clarity element. In neither Swesey's counterclaim, nor any motion with the trial court, was the purported public policy that was allegedly violated by his termination identified. It can only be speculated that he is either claiming that a public policy exists against terminating an employee based upon his common-law marital status[2] or that a public policy exists that an employee cannot be discharged for an alleged fraudulent act that did not occur. However, we do not need to address whether either of the above are clear public policies against the termination of an employee. It was Swesey's burden to indicate the specific public policy at issue and to establish how that clear public policy was violated by his termination.Sorensen v. Wise Mgt. Services, Inc., 8th Dist. No. 81627, 2003-Ohio-767 (stating that a person seeking to apply the public policy exception to the at-will employment doctrine must state with specificity the law or policy that was violated by his termination); Gargas v. City ofStreetsboro, 11th Dist. No. 2000-P-0095, 2001-Ohio-4334 (stating that the burden to produce specific facts demonstrating that a clear public policy exists and that discharge under the circumstances violates that public policy is the burden of the person claiming he was wrongfully discharged); Carver v. Universal Well Serv., Inc. (Aug. 20, 1997), 9th Dist. No. 96CA0082 (stating "When pleading this cause of action, a plaintiff must indicate the specific public policy at issue and explain how it was violated."). Swesey failed to meet his burden when he did not indicate the specific public policy at issue in his wrongful termination cause of action. Thus, as a matter of law, the trial court erred by failing to grant the Township's motion for a directed verdict.
 Due Process {¶ 11} The Township argues that it did not violate Swesey's due process rights and, as such, the Township was entitled to a directed verdict or JNOV on Swesey's counterclaim that his due process rights were violated. Despite having notice, the opportunity to be represented by an attorney, and to present and cross-examine witnesses, Swesey wanted to have input in whom was to be named as the arbitrator.
 {¶ 12} An at-will employee does not have a property or liberty interest in continued employment and, therefore, due process is not required. Merritt v. Canton Twp. Bd. of Trustees (1998),125 Ohio App.3d 533. Since Swesey is an at-will employee, due process was not required. Furthermore, as stated above, the Township gave Swesey notice of the disciplinary hearing and afforded him an opportunity to be heard at that hearing. Thus, even though due process was not required, the Township provided it. Therefore, the trial court erred by failing to grant a directed verdict or JNOV on this claim.
 Equal Protection {¶ 13} Next, the Township argues that a directed verdict or JNOV should have been granted on the equal protection claim. The Equal Protection Clause prevents a state from treating people differently under its laws on an arbitrary basis. State v. Williams, 88 Ohio St.3d 513,530, 2000-Ohio-428. Unless a suspect class or fundamental right is involved, the action need only bear a rational relationship to a legitimate state interest. Id. A classification based on marital status does not implicate a suspect class, nor does it involve a fundamental right. Smith v. Shalala (C.A. 7, 1993), 5 F.3d 235, 239. Accordingly, the trial court erred by failing to grant the Township's motion for directed verdict on this claim.
 Equitable Estoppel {¶ 14} Lastly, the Township argues that a directed verdict or JNOV should have been granted for the claim of equitable estoppel. Equitable estoppel prevents relief when one party induces another to believe that certain facts exist and the other party changes his position in reasonable reliance on those facts. Franklin Twp. v. Meadows (1998),130 Ohio App.3d 704, 711, citing Chubb v. Ohio Bur. of Workers' Comp.,81 Ohio St.3d 275, 279, 1998-Ohio-628. A prima facie case for equitable estoppel requires a plaintiff to prove four elements: 1) that the defendant made a factual misrepresentation; 2) that it is misleading; 3) that it induces actual reliance that is reasonable and in good faith; and 4) that it causes detriment to the relying party. Romine v. Ohio StateHwy. Patrol (2000), 136 Ohio App.3d 650, 654.
 {¶ 15} Swesey cannot meet the elements of equitable estoppel. Swesey testified that the Township would not have any reason to know that he was claiming a common-law marriage. (Tr. 165). Swesey never informed the Township on any of its paperwork that he was married by common-law. Furthermore, Township employees testified that they believed he was married, but did not know it was a common-law marriage. Given this information, it is clear that the Township made no factual misrepresentation to Swesey that it knew he had a common-law marriage, but was waiting to hold him liable for the difference in the family and single coverage. As such, the first two elements are not met. Thus, a directed verdict should also have been granted on this claim.
 {¶ 16} Accordingly, the arguments made under this assignment of error have merit. The trial court erred by failing to grant the Township's motion for directed verdict or JNOV on Swesey's counterclaims.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 17} "The trial court erred in instructing the jury that the Personnel Policy and procedure manual for Poland Township as an administrative regulation could be a sufficiently clear statement of Ohio Public Policy to establish an exception to the at-will employment doctrine. (Trial Tr. at 880-882.)"
 {¶ 18} During deliberations, the jury asked the court whether the employee handbook could be a statement of public policy. The trial court answered that it could; the Township then objected. The Township argues that an employee handbook is not a statement of public policy and the trial court erred in stating otherwise.
 STANDARD OF REVIEW {¶ 19} An appellate court reviews the jury instruction as a whole. The purpose of the jury charge is, "to state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired." Cleveland Elec. Illuminating Co. v. Astorhurst Land Co.
(1985), 18 Ohio St.3d 268, 272. If the jury instruction incorrectly states the law, then a de novo review is undertaken to determine whether the incorrect jury instructions probably misled the jury in a matter materially affecting the complaining party's substantial rights. Kokitkav. Ford Motor Co. (1995), 73 Ohio St.3d 89; State v. Lessin (1993),67 Ohio St.3d 487, 494.
 LAW AND ANALYSIS {¶ 20} "`Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." Collins, 73 Ohio St.3d at 69, quotingPainter, 70 Ohio St.3d 377.
 {¶ 21} Public policy, in substance, is the community's common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, and welfare. Philpot v.Williams (1983), 8 Ohio App.3d 241, citing Snyder v. Ridge Hill MemorialPark (1938), 61 Ohio App. 271. For example, a statewide public policy exists that a person should not be terminated from his employment because he complains of working conditions which jeopardize the employee's health and safety. Celeste v. Wiseco Piston, 151 Ohio App.3d 554, 558,2003-Ohio-703. The above public policy is embedded in the Whistleblower Statute to prohibit retaliatory firing of an employee who reports to his employer some criminal offense or safety hazard occurring at the workplace. R.C. 4113.51; Wood v. Dorcas (1998), 126 Ohio App.3d 730,736. Another statewide public policy is that parents remain responsible for their children's well being, including financial support and providing adequate care and education for their children. Lewis v. Chapin
(1994), 93 Ohio App.3d 695, citing R.C. 3111.01 through R.C. 3111.19 and R.C. 3111.20 through R.C. 3111.29. These are just two examples of public policy embedded in our society and statutes.
 {¶ 22} While public policy is not expressed solely in places such as constitutions, administrative rules and regulations, statutes and the common law, an employee handbook is not a proper source to determine a clear public policy. Regardless of whether the employer is a government entity, corporation, or sole proprietor, the employee handbook issued from the employer is not a statement of public policy. This is so because an employee handbook has no statewide application and is simply a statement of rules and policies that creates no obligation or rights. SeeMcIntosh v. Roadway Express, Inc. (1994), 94 Ohio App.3d 195, 201, citingTohline v. Cent. Trust Co. (1988), 48 Ohio App.3d 280, 282. If we were to hold that the public policy of this state may be determined by looking to employee handbooks, there would be thousands of "public policies" with conflicting provisions and limited only by the ingenuity of man. Therefore, it is with sound reasoning that it has been held that public policy is to be determined by the legislature, not the court or an employer. See, e.g. Pannozzo v. Anthem Blue Cross Blue Shield,152 Ohio App.3d 235, 2003-Ohio-1601, at ¶ 31, citing State ex rel.Ohio Academy of Trial Lawyers v. Sheward, 86 Ohio St.3d 451, 456,1999-Ohio-123, Goodman v. Goodman, 144 Ohio App.3d 367, 373,2001-Ohio-3310. Thus, the trial court erred by instructing the jury that an employee handbook may be a statement of a `clear' public policy. This argument has merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 23} "The verdict in favor of defendant Robert Swesey on Poland Township's claim for compensatory damages is against the manifest weight of the evidence. (Trial Tr. at 883-889.)"
 {¶ 24} The Township contends that Lewis and Swesey did not have a common-law marriage from 1988 to 1996 and, thus, Lewis was not rightfully entitled to health benefits through the Township. Therefore, according to the Township, Swesey must reimburse the Township for the difference in the cost between single and family health insurance. The jury determined that Swesey and Lewis had a valid common-law marriage and, therefore, Swesey was entitled to family health insurance coverage. The Township argues the jury's verdict that Swesey and Lewis had a common-law marriage was against the manifest weight of the evidence.
 STANDARD OF REVIEW {¶ 25} "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Snader v. Job Master Svcs.
(2000), 136 Ohio App.3d 86, 89. If there is competent, credible evidence going to all of the essential elements of the case, the judgment is not against the manifest weight of the evidence and will not be reversed.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 LAW AND ANALYSIS {¶ 26} On October 10, 1991, the legislature abolished an individual's right to enter into a common-law marriage. R.C. 3105.12(B)(1). However, those common-law marriages which occurred prior to October 10, 1991, remain valid. R.C. 3105.12(B)(2); State v. Phelps (1995),100 Ohio App.3d 187. Therefore, if a common-law marriage existed in 1988, it is valid.
 {¶ 27} A person seeking to establish a common-law marriage must prove four elements: 1) a mutual agreement to marry in praesenti, made by the parties competent to marry; 2) cohabitation as husband and wife; 3) holding themselves out as husband and wife in the community in which they live; and 4) being regarded as husband and wife in the community in which they live. Ogletree v. Ogletree (June 16, 1988), 7th Dist. No. 87C19;Nestor v. Nestor (1984), 15 Ohio St.3d 143, 145-146. All four elements must be proven by clear and convincing evidence to prove that a common-law marriage was established. Kowalik v. Kowalik (1997),118 Ohio App.3d 141, 144.
 {¶ 28} Regarding the first element, both Lewis and Swesey testified that on November 12, 1988, Swesey gave Lewis a ring and they decided to live as husband and wife and from that day on referred to each other as husband and wife. (Tr. 161, 368, 607). Lewis and Swesey also testify that it was their intention to later, after Lewis's children were older, have a formal ceremony in Las Vegas. (Tr. 368, 609). Other people also testified that this was their intention. (Tr. 339, 467-468, 483, 501).
 {¶ 29} The Township makes three arguments disputing the mutual agreement to marry in praesenti. First, the Township focuses on Lewis and Swesey's intent to have a formalized ceremony in Las Vegas in the future. A mutual promise to marry in the future, followed by cohabitation as husband and wife, is not, in itself, a valid marriage. In re Estate ofShepherd (1994), 97 Ohio App.3d 280, 285, citing Duncan v. Duncan
(1859), 10 Ohio St. 181, syllabus. However, both parties state that on November 12, 1988, they were married and later they just wanted to have a formalized ceremony. Therefore, a jury could conclude that this was not a promise to marry in the future.
 {¶ 30} Next, the Township argues that a statement Swesey made to the arbitrator during the disciplinary hearing indicates that Lewis and Swesey did not have a present intent to marry. Swesey stated to the arbitrator that it was his and Lewis' belief that if they wanted to go their own way during the time before their formal ceremony, they could do that without having to go to court. However, Swesey testified at trial that his testimony in front of the arbitrator was incorrect and that what he was trying to convey was his and Lewis' intention that they were married and would never get divorced. (Tr. 607). Common-law marriages can only be terminated through legal proceedings. Lyon v. Lyon (1993),86 Ohio App.3d 580 (stating that a common-law marriage is terminable by death, divorce, dissolution of marriage or annulment). However, the jury could believe Swesey's explanation of the statement he made to the arbitrator and, accordingly, conclude that there was a present intent to marry.
 {¶ 31} Lastly, the Township indicates that Swesey's income tax forms from 1988 to 1996 state his filing status as single instead of married. In 1994, the Third Appellate District stated that the use of state income tax forms that declared the individual, claiming to be common-law married, as single instead of married, taken in conjunction with other documents where the individual claimed to be single, established that there was not a present intent to marry. Shepard,97 Ohio App.3d at 284. Here, the income tax forms clearly stated he is single, however numerous other documentation admitted into evidence indicated that he and Lewis believed they were married, i.e. checks made out to "Bob and Ida Lewis," cards for all occasions designating them as husband and wife. Therefore, this case is distinguishable from Shepard.
Furthermore, Swesey testified that the reason he filed single was because he did not believe the federal government recognized common-law marriages and, therefore, in his opinion he could not claim to be married. (Tr. 214). Despite the above three arguments, given the evidence and testimony (including the explanations provided by Swesey), the jury could conclude that there was a present intent to marry.
 {¶ 32} The last three elements (cohabitation, holding themselves out as husband and wife, and the community regarding them as husband and wife) were established through testimony of family, friends, and co-workers. Edwin Beech, an employee of the Township, stated that he thought they were married. (Tr. 283). Larry Soldan, a friend of Swesey, testified that prior to 1992, Swesey introduced Lewis as his wife. (Tr. 333). William Shanabarger stated that he has known Lewis for 28 years and she has called Swesey her husband since the late 1980s. (Tr. 353). Amy Lewis and Laurie Appplegarth, Lewis' daughters, stated that Swesey and Lewis lived together as husband and wife since Swesey gave Lewis the ring in November of 1988. (Tr. 473, 484). Patricia Zembower, Swesey's sister, testified that Swesey and Lewis had a paper route for the Vindicator and their customers made the checks out to "Bob and Ida Swesey." (Tr. 489). Michelle Nicotera, a former co-worker of Lewis', testified that Lewis introduced Swesey to her as her husband (Tr. 499). Steve Cramer, who had worked with Swesey for 20 years, testified that Lewis referred to her ring as her wedding ring and they introduced each other as husband and wife. (Tr. 458). Given this testimony, a jury could conclude that they cohabitated as husband and wife and that the community regarded them as husband and wife.
 {¶ 33} Additionally, the Township directs this court's attention to the fact that Lewis and Swesey did not own real estate jointly, own any automobile jointly, and did not have a joint bank account during the time they claimed to be common-law married. While these facts are accurate, given the above testimony, a jury could conclude by clear and convincing evidence that Lewis and Swesey were common-law married. Therefore, the jury's verdict that a common-law marriage existed was not against the manifest weight of the evidence.
 {¶ 34} For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part. The jury's determination that Swesey and Lewis had a valid common-law marriage is affirmed. However, the trial court's decision denying the Township's motion for directed verdict or JNOV is reversed and we hereby grant judgment in favor of the Township on its motion for JNOV.
Waite, P.J. and Donofrio, J., concurs.
[1] The Township filed a motion for remittitur, which was granted by the court and the verdict was reduced to $30,000.
[2] There is no public policy against discharging an employee based upon his marital status. Van Sweden v. Goodyear Tire Rubber Co., 9th Dist. No. 20710, 2002-Ohio-2654.