[Cite as *Keefe v. Doornweerd*, 2013-Ohio-250.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| JEFFREY KEEFE | | C.A. No. 26377 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALBERTJE DOORNWEERD | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. 2010-05-1568 |

DECISION AND JOURNAL ENTRY

Dated: January 30, 2013

WHITMORE, Presiding Judge.

{¶1} Appellant, Jeffrey Keefe, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, dismissing his complaint for divorce. This Court affirms.

I

{¶2} Albertje Doornweerd met Keefe in 1982 or 1983 when she hired Keefe to work as a stylist in her salon. Within a year, the two began a romantic relationship and moved in together. Doornweerd's salon closed within a couple of years, and the two continued to work together at another local salon. Keefe worked at several salons around Akron and Cleveland over the next couple of years. Around 1987, Doornweerd decided to open another salon in Fairlawn, and Keefe returned to work with her. Doornweerd and Keefe worked together all but one of their 24 or 25 years together.

{¶3}  Over the years the couple moved to four or five different apartments.  Keefe testified that he spent every night with Doornweerd, except for a few months that he spent in New Mexico and a few nights when his father became ill.  Doornweerd and Keefe agreed that they were in a long-term, committed relationship and that they discussed children and caring for each other in the future.  Because Doornweerd is 20 years older than Keefe, the two discussed Doornweerd caring for Keefe presently, and Keefe providing for her when she got older.  At one time, Keefe was included in Doornweerd's will.

{¶4}  Keefe testified that they "pooled" their money together like a family.  According to Keefe, he always turned over his paychecks to Doornweerd.  Doornweerd, however, testified that only towards the beginning of their relationship did she deposit Keefe's paycheck, and even then she would deposit his check into the business account because she was trying to help him get out of debt.  After she had paid off his credit cards, according to Doornweerd, Keefe kept his paychecks and all of his tips while the business continued to pay for all of his living expenses.

{¶5}  Keefe testified that his parents gave them $5,000 towards the down payment on a building which Doornweerd purchased for her salon.  Keefe also explained that he agreed to a $12,000 annual salary and to work 60 to 80 hours a week because he was told that the business was part his.

{¶6}  Keefe and Doornweerd had their taxes prepared by the same accountants.  According to Keefe, he had very little contact with the accountants and just signed the returns.  However, Keefe also testified that every year they would meet with the accountants and they would ask the accountants if this was the year they would get married.  The decision to get married, according to Keefe, "was all based on income potential, or income disbursement, or tax performance."  At trial, Keefe presented a letter from the accounting firm to the City of Fairlawn

income tax department. The letter, dated September 17, 2003, included a sentence which said: "In addition, Mr. Keefe and Miss Doornweerd had a relationship which is recognized as a common-law marriage within the State of Ohio." Keefe and Doornweerd both denied making any such statements to the accountants. The accountants called to testify about the letter had no recollection of drafting the letter and did not remember Keefe or Doornweerd ever telling them that they had a common law marriage.

{¶7} In May 2010, Keefe filed a complaint for divorce alleging the two had a common law marriage. Subsequently, Doornweerd filed a motion to bifurcate. The court granted her motion and scheduled an evidentiary hearing to be held before a magistrate on May 16, 2011, "for the purpose of determining whether a common law marriage exists."

{¶8} Doornweerd filed her witness and exhibit list on May 9, 2011, seven days before the hearing. Keefe filed his witness and exhibit list on May 12, 2011, four days before the hearing. Doornweerd filed a motion in limine to exclude Keefe's witnesses and exhibits because he failed to file the list at least seven days before the evidentiary hearing, in violation of Loc.R. 12. After a hearing, the court granted Doornweerd's motion in limine. Specifically, the court excluded the exhibits because they did not pertain to the issue of determining whether a common law marriage existed and excluded the witnesses because Keefe did not show good cause for failing to comply with Loc.R. 12. The court did, however, permit testimony from Doornweerd's accountants.

{¶9} After Keefe presented his case at the evidentiary hearing, Doornweerd motioned the court for a directed verdict. The court granted the motion and dismissed the complaint for divorce, finding that Keefe had not established a common law marriage. Keefe filed objections

to the magistrate's decision, which the trial court overruled. Keefe now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL ERRED IN DETERMINING THAT THERE WAS NO COMMON LAW MARRIAGE BETWEEN PLAINTIFF-APPELLANT JEFFREY KEEFE AND DEFENDANT-APPELLEE ALBERTJE DOORNWEERD.

{¶10} In his first assignment of error, Keefe argues that the court erred in finding there was no common law marriage. We disagree.

{¶11} "Common law marriage is the joinder of a man and a woman as husband and wife without having first observed the formalities of licensure papers or ceremony." *In re Little*, 9th Dist. No. 19396, 1999 WL 1059672, *1 (Nov. 17, 1999). Ohio has prohibited common law marriages occurring on or after October 10, 1991. R.C. 3105.12(B)(1). Common law marriages that occurred prior to that date continue to be recognized and remain valid unless terminated by death, divorce, dissolution of marriage, or annulment. R.C. 3105.12(B)(2).

{¶12} A party seeking to establish a common law marriage must show, by clear and convincing evidence, "(1) an agreement to marry *in praesenti*, (2) cohabitation of the individuals as husband and wife, and (3) the treatment and reputation of the couple as husband and wife in the community and circle in which they reside." *In re Little* at *2, citing *Nestor v. Nestor*, 15 Ohio St.3d 143, 146 (1984).

{¶13} "The *in praesenti* element requires a meeting of the minds between the parties to presently take each other as husband and wife." *Rogers v. Rogers*, 9th Dist. No. 18280, 1997 WL 795820, *2 (Dec. 17, 1997). Without this threshold element, a common law marriage cannot be established, regardless of whether the parties cohabitate or their reputation as a couple.

*Id*. *See also Nestor* at 146. The parties' present intent to be husband and wife may be proven by either direct or indirect evidence. *Rogers* at *2. Indirect evidence includes "proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside." *Glover v. Glover*, 9th Dist. No. 21281, 2003-Ohio-1292, ¶ 8, quoting *Nestor* at 146.

{¶14} "Generally, absent an error of law, 'the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion.'" *Cirino v. Cirino*, 9th Dist. No. 11CA009959, 2011-Ohio-6332, ¶ 7, quoting *Barlow v. Barlow*, 9th Dist. No. 08CA0055, 2009-Ohio-3788, ¶ 5. An abuse of discretion indicates that the court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} In our review, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. In this case, the magistrate found that Keefe had not proven that the parties had a present intention to be married prior to October 10, 1991, when common law marriage was abolished. Because this was a factual finding, we review the trial court's decision under a manifest weight of the evidence standard. *Barlow* at ¶ 6. In a challenge to the weight of the evidence:

> [t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Alterations sic.) (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Manifest weight challenges the burden of persuasion. *Id*. at ¶ 19. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the

weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). This discretionary power should only be exercised in exceptional cases where the evidence presented weighs heavily in favor of the appellant and against the judgment. *Id*.

{¶16} Keefe argues that there is indirect evidence of the parties' actions to establish an agreement to marry *in praesenti*. Keefe further argues that the magistrate misinterpreted his testimony and that this misinterpretation was a decisive factor in its finding that there was no present intent to be married.

Indirect Evidence

{¶17} Keefe argues that the parties were in a committed relationship for 24 or 25 years. They discussed having children and caring for each other in the future. Keefe and Doornweerd worked together for almost their whole relationship. They began living together within a year of the commencement of their romantic relationship and shared numerous apartments together over the years. The two spent almost every night together, except for a few months when Keefe was in New Mexico and when his father became ill.

{¶18} Keefe testified that he always turned his paychecks over to Doornweerd and that she always handled the finances. Doornweerd testified that only early on in the relationship did she deposit his paycheck, and she only did so because she was paying off his credit card debts. Doornweerd testified that after the debts were paid, Keefe kept his paychecks and spent them. Both Doornweerd and Keefe maintained separate personal bank accounts. According to Doornweerd, the corporation paid all of Keefe's living expenses. At one time during their relationship Doornweerd had Keefe designated as a beneficiary in her will. Keefe argues that his

agreement to accept $12,000 a year to work 60 to 80 hours a week in the salon is proof that he considered part of the business to be his.

{¶19} Keefe argues that all of these actions, taken together, create an inference that the parties' had a present intent, prior to 1991, to take each other as husband and wife.

> Where there is no direct proof in reference to the formation of the contract of marriage *in praesenti,* testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabitating as man and wife.

(Emphasis sic.) *Glover*, 2003-Ohio-1292, at ¶ 9, quoting *Nestor*, 15 Ohio St.3d at 146. In this particular case, there is evidence that weighs against such inference.

{¶20} Keefe testified that in the mid-1990s, "[Doornweerd] was concerned about a commitment when [he] went to New Mexico." Keefe purchased a ring, "that was basically like an engagement ring," and gave it to her when he returned. According to Keefe, the ring "represent[ed], basically, our commitment to marry. It wasn't – we didn't have anything else at that point * * *." A promise to marry in the future, followed by cohabitation as husband and wife, is insufficient to establish a common law marriage. *Poland Twp. Bd. of Trustees v. Swesey*, 7th Dist. No. 02CA185, 2003-Ohio-6726, ¶ 29. Further, common law marriage was abolished in October 1991, prior to Keefe giving the "engagement ring" to Doornweerd. Keefe's promise to marry Doornweerd in the future indicates that he did not believe that they were already married by common law.

{¶21} Keefe further testified that they did not apply for a marriage license because of tax implications. Every year, according to Keefe, the two of them would ask their accountants if this was the year they get married. "[Whether they got married or not] was all based on income potential, or income disbursement, or tax performance." While the magistrate did incorrectly

attribute these statements to Doornweerd, its rationale remains sound: the parties expressly chose not to marry for tax reasons. A mutual commitment to marry at some point in the future is insufficient to establish a common law marriage. *See In re Estate of Shepherd*, 97 Ohio App.3d 280, 285 (3d Dist.1994), citing *Duncan v. Duncan*, 10 Ohio St. 181 (1859), syllabus. Keefe's own statements directly conflict with his assertion that the parties had a present intent, prior to 1991, to take each other as husband and wife.

{¶22} After reviewing the record, we cannot conclude that the fact-finder lost her way when she found that no *in praesenti* agreement to marry existed prior to October 1991.

Statement by Keefe

{¶23} The magistrate found that "importantly [Keefe] himself stated that he never held himself out to the community as being married because he knew he was not." Keefe asserts that his statement was merely acknowledging the absence of a marriage license. Keefe argues that the court misunderstood his statement to mean that there was no common law marriage, and that the court relied on this misunderstanding to find that the parties did not have a present intent to be husband and wife.

{¶24} From his testimony, Keefe does appear to equate the word marriage with having a marriage license. Keefe repeatedly testified that the two had a long term, committed relationship. However, this is does not rise to the level of a common law marriage. To support a finding of a common law marriage, Keefe was required to show that he and Doornweerd had, prior to October 1991, a meeting of the minds to presently take each other as husband and wife. *See Rogers*, 1997 WL 795820, at *2. As previously discussed, Keefe's own testimony indicates that the two did not consider themselves to be husband and wife. Keefe presented Doornweerd with an engagement ring in the mid-1990s, and the couple repeatedly asked their accountants

about the tax implications of marriage. Thus, even assuming Keefe's statement that he never held himself out to be married was a direct reference to a lack of marriage license, the weight of the evidence supports the finding that no *in praesenti* agreement to marry existed between the parties prior to October 1991.

{¶25} After a careful review of the record, we cannot conclude that this is the exceptional case where the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20; *Thompkins*, 78 Ohio St.3d at 387. In addition, we cannot conclude that the trial court's decision to adopt the magistrate's decision was arbitrary, unconscionable, or unreasonable. *See Blakemore*, 5 Ohio St.3d at 219. Accordingly, Keefe's first assignment of error is overruled.

<u>Assignment of Error Number Two</u>

THE MAGISTRATE ERRED IN EXCLUDING WITNESSES WHO WOULD HAVE TESTIFIED THAT THE PARTIES HELD THEMSELVES OUT AS MARRIED.

{¶26} In his second assignment of error, Keefe argues that the court abused its discretion in granting Doornweerd's motion in limine and excluding his witnesses from testifying at the evidentiary hearing.

{¶27} Summit County Court of Common Pleas, Domestic Relations Division, Loc.R. 12 requires parties to file a listing of all witnesses and exhibits at least seven days before trial or evidentiary hearing. The rule provides that "the court will not admit the testimony of any witness not timely listed, except for good cause shown." Loc.R. 12.02.

{¶28} A trial court has the broad discretion over discovery matters. *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶

18. "As such, this Court generally applies an abuse of discretion standard of review in appeals from discovery rulings * * *." *Kaplan v. Tuennerman-Kaplan*, 9th Dist. No. 11CA0011, 2012-Ohio-303, ¶ 10. An abuse of discretion indicates the trial court's ruling was arbitrary, unconscionable, or unreasonable. *Blakemore*, 5 Ohio St.3d at 219.

{¶29} Keefe filed his list of exhibits and witnesses four days before the evidentiary hearing, in violation of Loc.R. 12. Keefe argued that he was unaware of the local rule, but had filed the lists within two days of trial as was usually required by Judge Dezso. The magistrate found that this was not "good cause" and granted Doornweerd's request to exclude the witnesses and exhibits. We note that the court decided to exclude the exhibits because it found they were not relevant to the issue of whether there was a common law marriage. The court did permit testimony from the accountants, but excluded testimony from Keefe's mother and a friend who would have testified about "the relationship they had."

{¶30} After a hearing, the magistrate found that Keefe had not produced sufficient evidence to establish a common law marriage and issued its decision dismissing the complaint for divorce. Keefe filed an objection to the magistrate's decision, but failed to argue that the magistrate erred in excluding the testimony of the witnesses. Keefe argues that he was not required to object to the "actual exclusion of the proffered witnesses and testimony" because it was not part of the final order.

{¶31} However, "[i]nterlocutory orders * * * are merged into the final judgment. Thus, an appeal from the final judgment includes all interlocutory orders merged with it * * *." *Aber v. Vilamoura, Inc.*, 184 Ohio App.3d 658, 2009-Ohio-3364, ¶ 7 (9th Dist.), quoting *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, ¶ 9 (2d Dist.). The magistrate's decision to exclude testimony of certain witnesses became final when the magistrate issued its decision to

dismiss the complaint. Therefore, Civ.R. 53(D)(3) applies, and Keefe was required to raise this issue in his objections to the trial court. Because Keefe failed to raise this issue to the trial court, he has waived all but plain error on appeal. Civ.R. 53(D)(3)(b)(iv).

{¶32} Keefe, however, does not argue plain error on appeal, and we, therefore, decline to address his argument. *Nelson v. Nelson*, 9th Dist. No. 10CA0115-M, 2011-Ohio-6200, ¶ 34. Keefe's second assignment of error is overruled.

### III

{¶33} Keefe's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

>
> BETH WHITMORE
> FOR THE COURT

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
CONCURRING IN JUDGMENT ONLY.

{¶34} I fully join in the majority's resolution of the first assignment of error.

{¶35} I agree with the ultimate result reached by the majority in regard to the second assignment of error, and I, too, would overrule it. I do not agree that Mr. Keefe forfeited the issue because I am not convinced that he had to object pursuant to Civ.R. 53(D)(3) to the magistrate's interlocutory order excluding his testimony in order to preserve the issue for appeal. Furthermore, I agree that interlocutory orders are merged into the final judgment and that an appeal from a final judgment includes those interlocutory orders. I do not agree, however, that the magistrate's decision on the ultimate issue constituted a final judgment. The dismissal of the complaint did not become a final judgment until issued by the trial court. Accordingly, I do not believe that Mr. Keefe forfeited the issue on appeal. However, assuming without deciding that Mr. Keefe was not required to object regarding the magistrate's evidentiary ruling, I would overrule Mr. Keefe's second assignment of error because he did not adequately proffer the excluded evidence and he, therefore, failed to demonstrate any prejudice.

APPEARANCES:

TERENCE E. SCANLON, Attorney at Law, for Appellant.

KENNETH L. GIBSON, Attorney at Law, for Appellee.